The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE CTI BIOPHARMA CORP.
SECURITIES LITIGATION

No. 2:16-cv-00216-RSL

**CLASS ACTION**

**OPPOSITION OF DAFNA
LIFESCIENCE, LP AND DAFNA
LIFESCIENCE SELECT, LP TO
MEDICAL OPPORTUNITIES FUND'S
RENEWED MOTION TO BE
APPOINTED LEAD PLAINTIFF**

NOTING DATE: JULY 1, 2016

ORAL ARGUMENT REQUESTED

OPPOSITION TO RENEWED MOTION
Case No. 2:16-cv-00216-RSL

DAFNA LifeScience, LP and DAFNA LifeScience Select, LP (together, "DAFNA Movants" or "DAFNA") respectfully submit this opposition to the motion for appointment as lead plaintiff by IPConcept (Luxemburg) S.A. on behalf of apo Medical Opportunities ("Medical Opportunities Fund").

### PRELIMINARY STATEMENT

By way of background, DAFNA timely moved for appointment as Lead Plaintiff before this Court in *McGlothin v. CTI BioPharma Corp.*, No. 2:16-cv-00216-RSL (the "*McGlothin* Action" or the "Action") and before the Southern District of New York in *Ahrens v. CTI BioPharma Corp.*, 1:16-cv-01044-PAE (the "*Ahrens* Action"). *See* ECF No. 8; *Ahrens*, ECF Nos. 17, 18. As of April 29, 2016, DAFNA's motion before this Court was unopposed. *See* ECF No. 22. After the *Ahrens* Action was transferred to this Court and consolidated with the *McGlothin* Action, Medical Opportunities Fund submitted a "renewed motion" for appointment as Lead Plaintiff here that largely recycles unpersuasive contentions from its motion in the *Ahrens* Action. Now, as before, DAFNA remains the most adequate plaintiff and, thus, deserving of appointment as Lead Plaintiff.

DAFNA has the "largest financial interest" in the Action of all competing Lead Plaintiff movants, and there is no evidence that it is "inadequate" or "atypical" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii). DAFNA incurred approximately $1.39 million in losses as a result of its purchases of CTI BioPharma Corp. ("CTI") securities, which is a 38% larger loss than that suffered by Medical Opportunities Fund. DAFNA also easily meets the "adequacy" requirement to serve as Lead Plaintiff: DAFNA is a sophisticated investor that is committed to protect the interests of the Class and vigorously prosecute this Action. DAFNA has already demonstrated its commitment to take an active role in managing this Action, including by retaining able legal counsel specializing in securities litigation, timely seeking Lead Plaintiff appointment in this Action, supporting the transfer to this more appropriate forum of the *Ahrens* Action that was pending in the Southern District of New York, and organizing and drafting the

OPPOSITION TO RENEWED MOTION
Case No. 2:16-cv-00216-RSL

-1-

BRESKIN JOHNSON & TOWNSEND PLLC
Roger M. Townsend
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Tel: (206) 652-8660 • Fax: (206) 652-8290

stipulation to consolidate the *Ahrens* Action with this Action.  Finally, DAFNA's claims are "typical" of the members of the Class: DAFNA sustained losses stemming from its Class Period purchases of CTI securities offered to investors pursuant to the same registration statements and prospectuses and based on the same misrepresentations made to all other Class members.

In response to DAFNA's motion for Lead Plaintiff appointment, Medical Opportunities Fund repeats and recycles contentions that it previously made in the *Ahrens* Action without acknowledging that they were fully addressed and previously discredited by DAFNA.  For example, Medical Opportunities Fund again attempts to criticize the two DAFNA Movants for seeking Lead Plaintiff appointment.  The PSLRA, however, is clear that a "group of persons" may serve as lead plaintiff – not just a single individual or entity.  15 U.S.C. § 78u-4(a)(3)(B)(iii).  Medical Opportunities Fund also pretends that the two DAFNA Movants are unrelated entities that have "been assembled as a makeshift by attorneys."  ECF No. 32-2 at 8.  But Medical Opportunities Fund already attempted to raise this specious argument in the *Ahrens* Action, and the two DAFNA Movants have already demonstrated their tight-knit relationship.  As discussed in the declaration submitted by Mr. Howard Nurtman ("Nurtman Decl."), which was presented in the *Ahrens* Action, the DAFNA Movants are both Master Funds of the same entity, were created over two years ago for reasons entirely unrelated to this litigation, have the same general partner, and share the same investment manager.  *See* Declaration of David R. Stickney ("Stickney Decl."), Ex. A.

Next, Medical Opportunities Fund suggests that DAFNA cannot serve as Lead Plaintiff because it purchased and suffered losses on CTI preferred stock that converted to common stock.  This argument fails.  To begin with, this contention ignores that this class action was filed on behalf of investors in *all* securities purchased during the Class Period, including both DAFNA's convertible shares and common stock.  ECF No. 1 at ¶1.  In addition, Medical Opportunities Fund's contention overlooks that it also purchased convertible preferred shares and, just like DAFNA, claimed losses on those securities in seeking Lead Plaintiff appointment.  And, finally,

Medical Opportunities Fund's argument ignores the multitude of decisions finding that purchasers of preferred shares that convert to common stock are entitled to the same rights and presumptions under the federal securities laws as investors who purchase common stock.

For these reasons, and as further discussed below, DAFNA should be appointed as Lead Plaintiff in this Action.

## ARGUMENT

### I.    DAFNA HAS THE LARGEST FINANCIAL INTEREST

DAFNA has the "largest financial interest" in the Action, having suffered over $1.39 million in losses on CTI securities, which is 38% larger than the loss incurred by Medical Opportunities Fund.  Recognizing that fact, Medical Opportunities Fund asserts that the two DAFNA Movants' losses cannot be combined, and that DAFNA has "been assembled as a makeshift by attorneys."  ECF No. 32-2 at 8.  As discussed below, neither assertion is correct.

### A.    The DAFNA Movants' Losses Are Properly Considered Together

Medical Opportunities Fund first attempts to fault the two DAFNA Movants for seeking to serve jointly as Lead Plaintiff.  *See* ECF No. 32-2 at 8.  This argument is contrary to the text of the PSLRA, which provides that a "group of persons" may serve as lead plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).  As courts have explained, "there is no question that a group of investors can serve as 'lead plaintiff.'"  *Cook v. Atossa Genetics, Inc.*, 2014 WL 585870, at *6 (W.D. Wash. Feb. 14, 2014).  Indeed, courts in this Circuit and elsewhere routinely appoint groups of two or more investors to serve together as lead plaintiffs in securities class actions.[1]

Absent extraordinary circumstances not present here, courts typically aggregate the losses of the members of a lead plaintiff group in assessing which lead plaintiff movant has the largest "financial interest."  As courts in this Circuit have found, "[i]t is clear that the 'financial interest'

---

[1] *See Sabbagh v. Cell Therapeutics, Inc.*, 2010 WL 3064427, at *4-7 (W.D. Wash. Aug. 2, 2010) (appointing a small group to serve as lead plaintiff); *Bruce v. Suntech Power Holdings Co.*, 2012 WL 5927985, at *2 (N.D. Cal. Nov. 13, 2012) (aggregating losses and appointing as lead plaintiff "a small and cohesive group" of three individuals).

OPPOSITION TO RENEWED MOTION
Case No. 2:16-cv-00216-RSL

-3-

BRESKIN JOHNSON & TOWNSEND PLLC
Roger M. Townsend
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Tel: (206) 652-8660 • Fax: (206) 652-8290

of plaintiffs aligned together should be computed by aggregating their claims." *In re Ride, Inc., Sec. Litig.*, 1997 WL 33628677, at *1 (W.D. Wash. Aug. 5, 1997). In reaching this result, courts have explained that the "PSLRA authorizes plaintiffs to aggregate their losses for purposes of the lead plaintiff determination." *City of Ann Arbor Emps.' Ret. Sys. v. Accuray, Inc.*, 2009 WL 3517667, at *2 (N.D. Cal. Oct. 26, 2009). Aggregation of losses of the members of a lead plaintiff group is particularly appropriate where, as here, the group is comprised of just two related institutions and is "small and cohesive enough . . . [to] adequately control and oversee the litigation" *Cook*, 2014 WL 585870, at *6; *see also In re Versata, Inc. Sec. Litig.*, 2001 WL 34012374, at *6 (N.D. Cal. Aug. 20, 2001) (holding that "small groups . . . can aggregate their financial losses"). There is no reason to depart from the text of the PSLRA or these authorities in this case.

### B. The DAFNA Movants Have A Relationship That Predates And Is Unrelated To This Litigation

In support of its "renewed motion," Medical Opportunities Fund repeats the same wild speculation asserted in the *Ahrens* Action that DAFNA "has been assembled as a makeshift by attorneys for the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the action." ECF No. 32-2 at 8. Tellingly, Medical Opportunities Fund nowhere even mentions in its "renewed motion" how DAFNA fully addressed this assertion in the *Ahrens* Action. Likewise, Medical Opportunities Fund offers no response to the facts in the supporting declaration.

As set forth in the attached Nurtman Decl., which was also filed nearly two months ago in response to Medical Opportunity Fund's erroneous argument in the *Ahrens* Action, the DAFNA Movants' existence and relationship long predate and have nothing to do with this litigation. Nurtman Decl. ¶4. The DAFNA Movants were formed as Delaware limited partnerships in December 2013 – *i.e.*, over two years before this litigation. Nurtman Decl. ¶8. Limited partnership interests in the DAFNA Movants were offered to investors at the same time

OPPOSITION TO RENEWED MOTION
Case No. 2:16-cv-00216-RSL

-4-

and as part of the same offering.  Nurtman Decl. ¶9.  The DAFNA Movants' relationship includes, among other things, sharing the same investment manager and the same general partner – DAFNA Capital Management, LLC.  Nurtman Decl. ¶¶6-7.  In addition, both DAFNA Movants are Master Funds of the same entity, DAFNA Fund, L.P.  Nurtman Decl. ¶5.  In sum, Medical Opportunities Fund's suggestion that DAFNA "has been assembled" for purposes of aggregating damages in this litigation is demonstrably false.  ECF No. 32-2 at 8.

Equally false is Medical Opportunities Fund's suggestion that the DAFNA Movants' interest in proceeding as Lead Plaintiff is "assembled makeshift by attorneys."  ECF No. 32-2 at 8.  The DAFNA Movants lost a substantial amount of money as a result of their investments in CTI securities – over $1.39 million – and are fully committed to pursue and secure the best possible recovery for themselves and the Class.  Nurtman Decl. ¶¶10-11; *see also* ECF No. 9-1 at ¶3 (DAFNA's certification that it "fully understands the duties and responsibilities of lead plaintiff under the Private Securities Litigation Act" and will "oversee[] the prosecution of the action for the Class").  To that end, the DAFNA Movants have stated that they will continue to supervise counsel for the Class and vigorously prosecute this action, including by responding to discovery, appearing for deposition, and regularly discussing the litigation with counsel for the Class.  Nurtman Decl. ¶11; *see also* ECF No. 9-1 at ¶3.

## II.  DAFNA'S PURCHASES OF CONVERTIBLE PREFERRED SHARES DO NOT RENDER IT SUBJECT TO "UNIQUE" DEFENSES

Medical Opportunities Fund next asserts that DAFNA is supposedly subject to a "unique" defense and cannot serve as Lead Plaintiff because it seeks to recover its losses on its convertible preferred shares of CTI.  ECF No. 32-2 at 13-15.  Medical Opportunities Fund's argument fails for multiple reasons.

First, the Complaint filed in this Action is brought on behalf of a class of purchasers of all CTI securities issued during the Class Period.  *See* ECF No. 1 at ¶1.  Both common and convertible preferred shares were issued throughout the Class Period and, accordingly,

OPPOSITION TO RENEWED MOTION
Case No. 2:16-cv-00216-RSL

-5-

purchasers of both types of securities are members of the proposed Class.  For this reason, any theoretical argument by Defendants that holders of convertible preferred shares cannot be members of the Class would not be "unique" to DAFNA; rather, it would apply equally to *all* of the many purchasers of shares that converted to common stock.

Second, Medical Opportunities Fund itself *also* purchased both common and convertible preferred shares and *also* included its losses on these shares in calculating its financial interest.[2] As Medical Opportunities Fund acknowledges in footnote 3 to its "renewed motion," over 158,000 of its relevant shares in this Action are common shares from a preferred stock conversion, and were included in its calculation of its "financial interest."  *See* ECF No. 32-2 at 14 n.3; *see also* ECF No. 33-2 (Medical Opportunities Fund economic loss chart, which includes losses on its convertible preferred shares).  Having itself asserted claims based on losses on its convertible preferred shares, and having included those losses in calculating its own financial interest, Medical Opportunities Fund cannot credibly assert that DAFNA erred in doing the same.

Third, courts have specifically rejected arguments similar to that made by Medical Opportunities Fund here.  For example, in *Hom v. Vale, S.A.*, 2016 WL 880201, at \*4 (S.D.N.Y. Mar. 7, 2016), one of the lead plaintiff movants argued that "the Court's analysis [of financial loss] should . . . be limited to losses in common stock."  However, the court declined to limit the lead plaintiff "financial interest" analysis to common stock when, as here, the complaint was brought on behalf of investors of all securities.  *Id*. at \*5.  Noting that there was "no compelling basis for excluding losses" suffered on preferred shares when calculating the losses of competing movants, the court aggregated the lead plaintiffs' losses on both their common and preferred stock purchases.  *Id.*

---

[2] As explained in Medical Opportunities Fund's renewed motion, Medical Opportunities Fund acquired 158,400 shares of CTI common stock via a preferred share conversion.  ECF No. 32-2 at 14 n.3.  Medical Opportunities Fund's Economic Loss Analysis (ECF No. 33-2) lists a purchase of 158,400 shares of CTI on October 27, 2015, which is included in the calculation of Medical Opportunities Fund's total loss of $1,007,828.80.

OPPOSITION TO RENEWED MOTION
Case No. 2:16-cv-00216-RSL                                    -6-

BRESKIN JOHNSON & TOWNSEND PLLC
Roger M. Townsend
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Tel: (206) 652-8660 • Fax: (206) 652-8290

Fourth, Medical Opportunities Fund's argument ignores that courts frequently find that purchasers of one type of securities may adequately represent purchasers of other types of securities where, as here, the claims arise from a common course of conduct. *See In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 594 (N.D. Cal. 2009) ("[Courts] often appoint purchasers of one type of securities to represent purchasers of other types of securities of the same issuer where the interests of those purchasers are aligned."); *In re Atl. Fin. Fed. Sec. Litig.*, 1990 WL 188927, at *5 n.9 (E.D. Pa. Nov. 26, 1990) (because differences between the two do not "overshadow the common issues," common stock and preferred stock were certified in the same class). Indeed, in this case, DAFNA is ideally situated to serve as Lead Plaintiff because it purchased shares pursuant to CTI's public offerings and, thus, has standing to assert both Securities Act and Exchange Act claims and represent the entire Class.

Fifth, as a legal matter, Medical Opportunities Fund is wrong in arguing that investors who purchased convertible preferred shares are not afforded the same rights and presumptions under the federal securities laws. Courts have consistently concluded that purchasers of convertible preferred securities – just like purchasers of common stock – rely upon the market price of common stock when making investment decisions and are equally harmed when companies make false statements to investors. *See, e.g.*, *McEwen v. Digitran Sys., Inc.*, 160 F.R.D. 631, 637 (D. Utah 1994) ("The preferred shares were convertible into common stock. Therefore, what an investor was willing to pay for such shares depended upon the value of the common stock plus some premium for the additional privileges granted to preferred shareholders."); *see also In re Cobalt Int'l Energy, Inc.*, 2016 WL 215476, at *7 (S.D. Tex. Jan. 19, 2016) ("Because the bonds were convertible to common stock . . . Plaintiffs have alleged sufficient facts on the reliance factor for their § 10(b) claim as to the bond offerings."). Moreover, unlike Medical Opportunities Fund, DAFNA purchased preferred shares in three of CTI's offerings of preferred shares during the Class Period, and DAFNA has claims arising under the Securities Act for all three offerings.

OPPOSITION TO RENEWED MOTION
Case No. 2:16-cv-00216-RSL

-7-

Finally, the authority cited by Medical Opportunities Fund does not support it. Despite Medical Opportunities Fund's contention otherwise, the court did not hold in *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *5 (N.D. Cal. Aug. 22, 2008), that purchases of convertible preferred shares are not "purchase[s]" under the federal securities law. ECF No. 32-2 at 4. Rather, that decision concerned a completely different situation, in which a plaintiff purchased a unique type of security that converted into the shares of a *totally different company*. Also significant, in that case, the original convertible shares were purchased on a foreign exchange – the Tel Aviv Stock Exchange. Here, in contrast, CTI's preferred shares purchased by DAFNA and other investors converted to common shares in the *same company* (CTI), and both the preferred and common shares were both listed on the same domestic exchange (NASDAQ).

Medical Opportunities Fund's reliance on *Isquith by Isquith v. Caremark Int'l, Inc.*, 136 F.3d 531, 534-37 (7th Cir. 1998) is also misplaced. In *Isquith*, a company (Baxter) transferred ownership of its subsidiary (Caremark) to its shareholders in order to insulate itself from the subsidiary's eventual decline; each Baxter shareholder received Caremark shares in proportion to its holdings in Baxter stock. *Isquith*, 136 F.3d at 532. A securities fraud class action was brought by owners of Baxter shares at the time of the Caremark spinoff, who alleged that Baxter "forced" them to acquire shares in Caremark. The court found that there was no "sale" of shares because the Baxter shareholders merely received one share of Caremark for every four shares of Baxter and, thus, there "was no reliance, no investment decision, because the plaintiff did not have a choice whether or not to accept the new stock." *Isquith*, 136 F.3d at 537. Here, in contrast, DAFNA *did* make an investment decision: DAFNA *decided* to purchase convertible preferred shares in CTI's public offerings and convert those shares to shares of CTI common stock during the Class Period.

The Ninth Circuit's unpublished decision in *Cadiz Land Co. v. Waste Mgmt., Inc.*, 230 F.3d 1366 (9th Cir. 2000) is also inapposite. In that case, unlike here, plaintiff alleged in its complaint that it disposed of shares of another company to permit it to engage in an acquisition

OPPOSITION TO RENEWED MOTION
Case No. 2:16-cv-00216-RSL

-8-

and did not care about the market price of the shares at the time of the disposition.  230 F.3d at *1 ("Cadiz has alleged that it engaged in this sale *for reasons other* than the value of the stock, namely as part of its plan to acquire Sun World.").  In marked contrast to the facts in *Cadiz*, DAFNA and the other CTI investors purchased convertible preferred shares and converted those shares to common stock in reliance on CTI's misrepresentations to investors and the integrity of the market price of CTI's securities.[3]

### CONCLUSION

For these reasons, and those in its opening motion, DAFNA respectfully requests that the Court appoint DAFNA as Lead Plaintiff, approve its selection of Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel, and grant it any further relief that the Court deems necessary.

Dated: June 22, 2016                          Respectfully submitted,

By: */s/David R. Stickney*
By: */s/ Rachel Felong*
David R. Stickney (*pro hac vice*)
Rachel Felong (*pro hac vice*)

BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:    (858) 793-0070
Fax:    (858) 793-0323
davids@blbglaw.com
rachel.felong@blbglaw.com

*Counsel for Proposed Lead Plaintiff DAFNA and Proposed Lead Counsel for the Class*

By: */s/ Roger M. Townsend*

---

[3] The final case cited by Medical Opportunities Fund, *Poptech, L.P. v. Stewardship Inc. Advisors, LLC*, 849 F. Supp. 2d 249 (D. Conn. 2012), further undermines its argument.  In *Poptech*, the court held that an investor who purchased preferred shares prior to the start of the class period, and converted them during the class period, *did* "satisf[y] the purchase or sale of a security requirement."  *Id*. at 272-73.

OPPOSITION TO RENEWED MOTION
Case No. 2:16-cv-00216-RSL                          -9-

BRESKIN JOHNSON & TOWNSEND PLLC
Roger M. Townsend
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Tel: (206) 652-8660 • Fax: (206) 652-8290

Roger M. Townsend

BRESKIN JOHNSON & TOWNSEND PLLC
ROGER M. TOWNSEND, WSBA #25525
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Tel: (206) 652-8660
Fax: (206) 652-8290
rtownsend@bjtlegal.com

*Local Counsel for Proposed Lead Plaintiff DAFNA*

OPPOSITION TO RENEWED MOTION
Case No. 2:16-cv-00216-RSL

-10-

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

/s/ David R. Stickney
DAVID R. STICKNEY

OPPOSITION TO RENEWED MOTION
Case No. 2:16-cv-00216-RSL

-11-

BRESKIN JOHNSON & TOWNSEND PLLC
Roger M. Townsend
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Tel: (206) 652-8660 • Fax: (206) 652-8290