The Honorable Robert. S. Lasnik

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| IN RE CTI BIOPHARMA CORP SECURITIES LITIGATION | No. C16-216-RSL <br><br> **<u>CLASS ACTION</u>** <br><br> MEDICAL OPPORTUNITIES FUND'S MEMORANDUM OF LAW IN REPLY TO THE OPPOSITION OF DAFNA LIFESCIENCE, LP AND DAFNA LIFESCIENCE SELECT, LP TO MEDICAL OPPORTUNITIES FUND'S RENEWED MOTION TO BE APPOINTED LEAD PLAINTIFF <br><br> NOTING DATE: JULY 1, 2016 |

MEDICAL OPPORTUNITIES FUND'S MEMORANDUM
OF LAW IN REPLY TO OPPOSITION TO MOTION TO
BE APPOINTED LEAD PLAINTIFF
(Case No.: C16-216-RSL)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

IPConcept (Luxemburg) S.A. on behalf of apo Medical Opportunities ("Movant" or "Medical Opportunities Fund"), submits this Memorandum of Law in Reply to the Opposition of DAFNA LifeScience, LP and DAFNA LifesScience Select, LP (collectively "DAFNA") to Medical Opportunities Fund's Renewed Motion to be Appointed Lead Plaintiff.

## I.    ARGUMENT

Medical Opportunities Fund's Motion for Lead Plaintiff (Dkt No. 32) should be granted, and DAFNA's Motion (Dkt No. 8) should be denied.  DAFNA faces unique arguments and defenses that Medical Opportunities Fund does not.  In particular, as further described below, all of DAFNA's claimed losses result from common shares that were converted from preferred CTI BioPharma Corp. ("CTI BioPharma," "CTI" or the "Company") shares to CTI common shares.  Significantly, the conversions were made not at market prices but at prices fixed by the offering documents for the preferred convertible stock.   This opens up DAFNA to unique arguments that it did not "purchase" such common shares as defined by the securities laws and arguments that it did not rely on the allegedly fraudulent representations.  Although DAFNA also purchased CTI stock on the open market during the Class Period, it also sold all these shares during the Class Period and prior to any corrective disclosure.  Under the Supreme Court's holding in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346 (2005), these open market-purchased shares were not damaged, as further described below. In other words, DAFNA has no recoverable losses for any of its direct purchases of common stock. If it is determined that DAFNA's converted shares were not "purchased" or were purchased but not in reliance on the market price of CTI stock, the result will be that DAFNA will have suffered no damages and lacks standing to prosecute the claims.  These unique defenses and issues facing DAFNA—that Defendants no doubt will attempt to exploit at the motion to dismiss, class certification, and later stages of the litigation, and even on appeal—render DAFNA atypical and inadequate to serve as Lead Plaintiff.

1

MEDICAL OPPORTUNITIES FUND'S MEMORANDUM
OF LAW IN REPLY TO OPPOSITION TO MOTION TO
BE APPOINTED LEAD PLAINTIFF
(Case No.: C16-216-RSL)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

Given the alternative of Medical Opportunities Fund, an institutional investor (like DAFNA), with very large losses of over a million dollars (like DAFNA), and without the specter of unique defenses (unlike DAFNA), there is no need to subject the prospective Class to these issues by appointing DAFNA lead plaintiff. Instead, Medical Opportunities Fund should be appointed Lead Plaintiff. Medical Opportunities Fund has the largest loss of any lead plaintiff movant that otherwise satisfies Rule 23(a), Fed. R. Civ. P., and in fact has the largest loss of any single individual or entity seeking lead plaintiff appointment.

### A.    All Of DAFNA's Claimed Losses Result From Common Stock Converted From Preferred Stock And Its Open-Market Purchased Shares Are Not Damaged

In *Dura Pharmaceuticals, Inc. v. Broudo*, the Supreme Court held that a securities fraud plaintiff must "prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss." 544 U.S. at 346. Purchasing securities at an artificially inflated price does not meet this burden. Rather, there must be some loss, such as the fact that the share price fell significantly after the truth became known. *Id.* at 346-47. Thus, the Supreme Court held that losses suffered <u>prior</u> to a corrective disclosure in a Section 10(b), Securities Exchange Act, case are not compensable because such losses are incurred while the stock is artificially inflated and before the fraud is revealed. *Id.* Since the Supreme Court's ruling in *Dura*, "courts routinely analyze the loss calculation in lead plaintiff applications in terms of trading and remove losses suffered prior to a corrective disclosure." *Durgin v. Tousa, Inc.* No 06-61844, 2008 WL 2761301, at *2 (S.D. Fla. July 15, 2008); *see, e.g. Perlmutter v. Intuitive Surgical, Inc.,* No. 10-03451, 2011 WL 566814, at *7 (N.D. Cal. Feb. 15, 2011) (performing *Dura* analysis on lead plaintiff motion); *Eichenholtz v. Verifone Holdings, Inc.,* No. C07-06140MHP, 2008 WL 3925289, at *4 (N.D. Cal. Aug. 22, 2008) (applying *Dura* on lead plaintiff motion and explaining that "the court finds no reason to include losses in its calculations that would later be considered uncompensable").

2

MEDICAL OPPORTUNITIES FUND'S MEMORANDUM
OF LAW IN REPLY TO OPPOSITION TO MOTION TO
BE APPOINTED LEAD PLAINTIFF
(Case No.: C16-216-RSL)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

The first corrective disclosure in this case did not occur until February 8, 2016. The Complaint – Class Action – for Violation of Federal Securities Laws ("Complaint") (Dkt No. 1) alleges that on February 8, 2016, CTI issued a press release announcing that a partial clinical hold had been placed on pacritinib by the U.S. Food and Drug Administration ("FDA"). *Id.* at ¶4. On this news, shares of CTI Biopharma declined $0.68 per share, or over 60%, to close at $0.44 on February 8, 2016, on unusually heavy volume. *Id.* at ¶5. On February 9, 2016, the Company issued a press release announcing that the FDA had placed a full clinical hold on pacritinib. *Id.* at ¶6. On this news, CTI's shares fell over 40% during intraday trading on February 10, 2016, on unusually heavy volume of over 15 million shares. *Id.* at ¶7.

As described in Medical Opportunities Fund's Renewed Motion, DAFNA purchased convertible preferred stock at $1,000 per share in three public offerings on November 7, 2014, October 27, 2015 and December 4, 2015, respectively. *See* Motion of DAFNA Lifescience, LP and DAFNA Lifescience Select, LP for Appointment as Lead Plaintiff and Approval of its Selection of Lead Counsel ("DAFNA Motion") at 3-4, 7-8 (Dkt No. 8); Declaration of David R. Stickney in Support of the Motion of DAFNA Lifescience, LP and DAFNA Lifescience Select, LP for Appointment as Lead Plaintiff and Approval of its Selection of Lead Counsel ("Stickney Decl.") at Exhibit A (Dkt No. 9). DAFNA then converted these preferred shares into 4,693,181 common shares, not at market prices, but at the predetermined prices of $2.00, $1.25 and $1.10 per share. *Id.* Of the $4,892,427.37 in Class Period common stock acquired by DAFNA Lifesciences, LP, $4,097,000 was from preferred stock conversions. *Id.* Of the $3,208,083.90 in Class Period stock acquired by DAFNA Lifesciences Select, LP, $2,652,999.10 was from preferred stock conversions. *Id.* While DAFNA also purchased CTI common stock on the open market, under *Dura*, none of the CTI shares purchased by DAFNA in the open market during the Class Period are eligible for damages, as explained below.

3

MEDICAL OPPORTUNITIES FUND'S MEMORANDUM
OF LAW IN REPLY TO OPPOSITION TO MOTION TO
BE APPOINTED LEAD PLAINTIFF
(Case No.: C16-216-RSL)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

To be exact, DAFNA LifeSciences, LP acquired 838,000 common shares (through conversions of preferred stock) on November 7, 2014. *See* Stickney Decl. at Ex. B. It sold these shares in December 2014 through March 2015, leaving a zero balance of CTI shares. *Id.* DAFNA LifeSciences, LP then acquired 419,827 shares of CTI common stock in the open market in April 2015. *Id.* It then sold these shares in May 2015, again leaving it with a zero balance of CTI shares. *Id.* During the remainder of the Class Period, DAFNA LifeSciences, LP acquired 2,070,000 common shares (through preferred stock conversions), but made no more open market purchases. *Id.*

Similarly, DAFNA LifeSciences Select, LP acquired 537,000 common shares (through conversions of preferred stock) on November 7, 2014. *See* Stickney Decl. at Ex. B. It sold these shares in December 2014 through March 2015, leaving a zero balance of CTI shares. *Id.* DAFNA LifeSciences Select, LP then acquired 292,973 CTI common shares in the open market in April 2015. *Id.* It then sold these shares in May 2015, again leaving it with a zero balance of CTI shares. *Id.* During the remainder of the Class Period, DAFNA LifeSciences Select, LP acquired 1,348,181 common shares (through preferred stock conversions), but made no more open market purchases. *Id.*

Whether calculated under last-in-first-out ("LIFO") or first-in-first-out ("FIFO"), DAFNA liquidated its entire position of open market-purchased CTI stock by May 2015, well within the Class Period. *See* Complaint at ¶¶4-7. Under *Dura,* these shares were not damaged because they were liquidated prior to any corrective disclosure. 544 U.S. at 346. Thus, while DAFNA points out that it has out of pocket losses 38% greater than Medical Opportunities Fund, it may be that none of these losses are compensable damages under the securities laws.

In contrast, if Medical Opportunities Fund's converted common shares are excluded from the calculation of its losses, Medical Opportunities Fund still has a sizeable loss of $895,364.80. *See* Exhibit 1, Declaration of William B. Federman in Support of Medical Opportunities Fund's Memorandum of Law in Reply to the Opposition of DAFNA Lifescience, LP and DAFNA

4

MEDICAL OPPORTUNITIES FUND'S MEMORANDUM
OF LAW IN REPLY TO OPPOSITION TO MOTION TO
BE APPOINTED LEAD PLAINTIFF
(Case No.: C16-216-RSL)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

Lifescience Select, LP to Medical Opportunities Fund's Renewed Motion to be Appointed Lead Plaintiff ("Federman Reply Decl.") at Exhibit A.

### B.      DAFNA Faces Unique Defenses that Make It Inadequate to Serve as Lead Plaintiff

While the PSLRA provides a rebuttable presumption that the movant with the largest financial interest is the most adequate, "the court is nonetheless under a specific obligation to appoint as lead plaintiff the class member or members most capable of adequately representing the interests of the class members." *Wenderhold v. Cylink Corp*., 188 F.R.D. 577, 584 (N.D. Cal. 1999) (citing 15 U.S.C. § 78u–4(3)(B)(I)).  Accordingly, courts typically decline to appoint lead plaintiffs that are subject to unique defenses due to concerns that it may jeopardize the case or become the focus of the litigation. *See, e.g., In re Critical Path, Inc. Sec. Litig.,* 156 F. Supp. 2d 1102, 1110-11 (N.D. Cal. 2001) (refusing to appoint lead plaintiff with arguably largest financial interest based on unique defenses that would "invite[] lengthy litigation both at the class certification stage and thereafter" and reasoning that "while [movant] has many desirable characteristics, such as its large financial interest" to appoint it as lead plaintiff "would disserve the class that the Court is charged with protecting"); *Tsirekidze v. Syntax-Brillian Corp.,* No. CV-07-2204-PHX-FJM, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) (declining to appoint as lead plaintiff movant whose frequent trading could undermine reliance or a fraud-on-the-market theory since such an issue "could become the focus of the litigation"); *In re Peregrine Sys., Inc. Sec. Litig.,* No. CIV.02 CV 870-J(RBB), 2002 WL 32769239, at *7 (S.D. Cal. Oct. 11, 2002) (declining to appoint lead plaintiff subject to unique defenses that "may sidetrack litigation at later stage and emphasizing that "the court has the job of protecting the interests of the class").  Importantly, "whether these defenses will be successful is of no matter. The fact that plaintiffs will be subject to such defenses renders their claims atypical of other class members.'" *Peregrine Sys.,* 2002 WL 32769239, at *7 (quoting *Landry v. Price Waterhouse*

5

MEDICAL OPPORTUNITIES FUND'S MEMORANDUM
OF LAW IN REPLY TO OPPOSITION TO MOTION TO
BE APPOINTED LEAD PLAINTIFF
(Case No.: C16-216-RSL)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

*Chartered Accountants,* 123 F.R.D. 474, 476 (S.D.N.Y. 1989));*see also* Memorandum of Law in Support of Renewed Motion of Movant Medical Opportunities Fund to be Appointed Lead Plaintiff and Approve Proposed Lead Plaintiff's Choice of Lead Counsel ("Medical Opportunities Fund's Brief") (Dkt No. 32-2) at 12-16.

DAFNA attempts to refute Medical Opportunities Fund's argument that DAFNA's large losses from common stock converted from preferred stock renders it an atypical investor and inadequate class representative by pointing to Medical Opportunities Fund's concession that it too converted CTI preferred stock to common stock during the Class Period.  It is true that Medical Opportunities Fund (like DAFNA) acquired common stock (158,400 shares) through preferred stock conversions.  However, DAFNA's and Medical Opportunities Fund's situations differ materially in that <u>all</u> of DAFNA's claimed losses result from common stock converted from preferred stock. Indeed, the overwhelming majority of Medical Opportunities Fund's losses come from open market purchases of CTI common stock whereas DAFNA suffered <u>no</u> losses from open market common stock purchases.  On top of that, all of DAFNA's preferred stock conversions were at fixed (other than market) prices.  As such, DAFNA, at least arguably, did not rely on the market price of CTI common stock in entering into the transactions and may not qualify as a "purchaser" under the securities laws.

C.      **DAFNA's Remaining Arguments are Without Merit**

In an attempt to diminish Medical Opportunities Fund's arguments, DAFNA asserts that courts "frequently" permit purchasers of one type of security to represent purchasers of other types of securities.  However, the fact remains that courts also frequently refuse to allow purchasers of one type of security to represent purchasers of other securities.  *See, e.g., In re Countrywide Fin. Corp. Sec. Litig.,* 273 F.R.D. 586, 601 (C.D. Cal. 2009) (holding that debt investors "may not represent purchasers of Countrywide common stock (or options on the common)"); *Goldstein v. Cytogen Corp.,*

6

MEDICAL OPPORTUNITIES FUND'S MEMORANDUM
OF LAW IN REPLY TO OPPOSITION TO MOTION TO
BE APPOINTED LEAD PLAINTIFF
(Case No.: C16-216-RSL)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

No. CIV. 92-3960 (CSF), 1993 WL 274246, at *5 (D.N.J. June 7, 1993) (finding that common stock purchasers could not represent purchasers of preferred stocks or warrants); *Weisfeld v. Spartans Industries, Inc.,* 58 F.R.D. 570, 581 (S.D.N.Y. 1972) (a holder of common stock may not represent Class A stockholders).

DAFNA further argues that it purchased convertible preferred shares in three separate offerings during the Class Period, both common stock and preferred shares are part of the Class, and DAFNA's convertible preferred shares count toward losses in the lead plaintiff analysis. But preferred shares are not presently part of this lawsuit. It is true, as DAFNA points out, that the Complaint alleges claims on behalf of CTI "securities" purchasers; but there is no reference to preferred stock, only common, there are no allegations concerning corrective disclosures as to preferred stock or prices at which the preferred shares traded—it does not appear such shares were actively traded, if at all[1]—, only common, and no allegations concerning the preferred stock offerings referenced in DAFNA's Motion for Lead Plaintiff at 3-4 (Dkt No. 8)). Similarly, DAFNA asserts in its Opposition that "DAFNA sustained losses stemming from its Class Period purchases of CTI securities offered to investors pursuant to the same registration statements and prospectuses." *Id.* at 1-2. However, none of the registration statements and prospectuses under which DAFNA purchased its preferred shares is the common stock registration statement and prospectus pursuant to which the Securities Act  claims (§11 and §15) are brought in the Complaint. Dkt No. 1 at ¶¶1, 31, 43-44.

DAFNA simply has no compensable damages for open market-purchased CTI common stock. On the other hand, Medical Opportunities Fund has compensable damages both for open market-purchased shares and converted common shares. Thus, if asserting claims on behalf of preferred

---

[1] Although DAFNA asserted both CTI common and preferred stock traded on NASDAQ (DAFNA Opp. at 8) Medical Opportunities Fund has been unable to locate a preferred stock listing.

7

MEDICAL OPPORTUNITIES FUND'S MEMORANDUM
OF LAW IN REPLY TO OPPOSITION TO MOTION TO
BE APPOINTED LEAD PLAINTIFF
(Case No.: C16-216-RSL)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

shares is deemed appropriate under the circumstances Medical Opportunities Fund clearly has standing to assert such claims.

With financial losses of $1,007,828.80 incurred as a result of the wrongful conduct alleged in this action, it is evident that Medical Opportunities Fund has a significant interest in prosecuting this action to a successful conclusion. Indeed, a principal purpose of the PSLRA is to allow for institutional plaintiffs with big financial stakes and expertise in the area to serve as lead plaintiff and control the litigation. *Frias v. Dendreon Corp*., 835 F. Supp. 2d 1067, 1073-74 (W.D. Wash. 2011); *In re Network Associates, Inc., Sec. Litig*., 76 F.Supp.2d 1017, 1023–25 (N.D. Cal. 1999). The appointment of Medical Opportunities Fund, an institutional investor with over a million dollars in losses, as Lead Plaintiff would fulfill this purpose. Because Medical Opportunities Fund has significant losses of $1,007,828.80 and because Medical Opportunities Fund is not subject to unique defenses that jeopardize the successful prosecution of this action, appointing Medical Opportunities Fund as Lead Plaintiff would best serve the interests of the class. *Cf. In re Pfizer Inc. Sec. Litig.,* 233 F.R.D. 334, 338 (S.D.N.Y. 2005) (after removing from consideration the plaintiff with the largest purported damages, the court further declined to appoint as lead plaintiff the movant with the next largest losses by finding it and another plaintiff had "roughly equal damages" and appointing the plaintiff with slightly smaller losses based on the finding that it "is the more adequate of the two plaintiffs").

## II.   CONCLUSION

For the reasons set forth above, Movant respectfully requests that the Court: (1) appoint Movant Medical Opportunities Fund as Lead Plaintiff in this action; (2) approve Movant's selection of Federman & Sherwood as Lead Counsel and Keller Rohrback L.L.P. as Liaison Counsel; and (3) grant such other relief as the Court may deem just and proper.

8

MEDICAL OPPORTUNITIES FUND'S MEMORANDUM
OF LAW IN REPLY TO OPPOSITION TO MOTION TO
BE APPOINTED LEAD PLAINTIFF
(Case No.: C16-216-RSL)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

Dated: July 1, 2016

Respectfully submitted,

By: /s/ William B. Federman
William B. Federman, *Admitted Pro Hac Vice*
FEDERMAN & SHERWOOD
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile:  (405) 239-2112
-and-
2916 Maple Ave., Ste. 200
Dallas, TX 75201
Telephone:  (214) 696-1100
wbf@federmanlaw.com

*Counsel for Movant Medical Opportunities Fund*
*and Proposed Lead Counsel for Plaintiffs*

By:  */s/ Juli E. Farris*
Juli E. Farris, WSBA #17593
Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
E: jfarris@kellerrohrback.com
T: (206) 623-1900
F: (206) 623-3384

*Local Counsel for Movant Medical Opportunities*
*Fund and Proposed Liaison Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (ECF) and paper copies will be sent to those indicated as non-registered participants on July 1, 2016.

*/s/ William B. Federman*
William B. Federman

9

MEDICAL OPPORTUNITIES FUND'S MEMORANDUM
OF LAW IN REPLY TO OPPOSITION TO MOTION TO
BE APPOINTED LEAD PLAINTIFF
(Case No.: C16-216-RSL)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900