EXHIBIT 3

Rabin v. John Doe Market Makers, --- F.Supp.3d ---- (2015)

2015 WL 3755298

2015 WL 3755298
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

I. Stephen RABIN, on behalf of himself and all
others similarly situated, Plaintiff,
v.
JOHN DOE MARKET MAKERS, Nasdaq Omx
Phlx LLC, and Nasdaq Omx Group, Inc.,
Defendants.

Civil Action No. 15–551.
|
Signed June 16, 2015.

**Attorneys and Law Firms**

Jeffrey H. Squire, Lawrence P. Eagel, Bragar Eagel & Squire PC, New York, NY, Lawrence Deutsch, Robin Switzenbaum, Berger & Montague, P.C., Deborah R. Gross, Law Offices Bernard M. Gross, PC, Phyllis M. Parker, Berger & Montague, Philadelphia, PA, for Plaintiff.

Stephen J. Kastenberg, Ballard Spahr Andrews & Ingersoll, Lisa B. Swaminathan, Ballard Spahr LLP, Paul Lantieri, III, Ballard Spahr et al., Richard L. Scheff, K. Carrie Sarhangi, Richard L. Scheff, Sidney S. Liebesman, Richard L. Scheff, Montgomery McCracken Walker & Rhoads LLP, Laura Hughes McNally, Morgan Lewis & Bockius LLP, Lisa B. Wershaw, Law Offices of Michael Lipuma, Philadelphia, PA, David C. Bohan, Hannah O. Koesterer, Patrick M. Smith, Katten Muchin Rosenman LLP, Kyle David Rettberg, Phillip L. Stern, Neal Gerber & Eisenberg LLP, Chicago, IL, Lee D. Unterman, Montgomery McCracken Walker & Rhoads LLP, Amy J. Greer, Morgan, Lewis & Bockius LLP, Richard M. Asche, Litman, Asche, Gioiella, LLP, New York, NY, Michael D. Lipuma, Philadelphia, PA, for Defendants.

*MEMORANDUM*

McHUGH, District Judge.

## I. Introduction

**\*1** Now before me in this purported securities class action are motions by two parties who wish to be appointed as lead plaintiff for a class of investors.

Plaintiff I. Stephen Rabin ("Rabin") is an individual investor and filed the original Complaint in this action. He describes himself as "an attorney who actively invests in the options market and is familiar with securities markets." Rabin's Memorandum in Further Support of his Motion for Appointment as Lead Plaintiff at 10. Plaintiff Rabin's Complaint alleges a complex conspiracy among certain market participants to use special market privileges to unfairly extract dividend payments from stocks. I will briefly summarize the extensive allegations in Rabin's Complaint.

The Complaint focuses on alleged actions of certain "market makers." A market maker is a dealer who plays a quasi-regulatory role in a market, promoting liquidity in the market by promising to be able to engage in transactions with other brokers or dealers at quoted prices. Complaint ¶ 1 n. 1; 17 C.F.R. § 15c3–1(c)(8). Market makers enjoy certain privileges because of their quasi-regulatory status.

The Complaint alleges the market makers used these privileges to unfairly manipulate certain options trades. As Plaintiffs put it, "[a]n option is a contract to buy or sell a specific underlying security." Complaint ¶ 15. A particular kind of option is called a "call;" it "gives the holder (the 'buyer') the right, but not the obligation, to buy 100 shares of the underlying security ... at a specified price." Complaint ¶ 19. An entity may both sell and buy options. An entity that has sold more than it has bought has taken a "short" position; the reverse is a "long" position. Complaint ¶ 20. Sellers receive a premium fee for writing and selling an option. Complaint ¶ 21.

When a party exercises an option to acquire the security to which the option relates, she sends a notice to the Options Clearing Corporation (OCC). Complaint ¶ 24. The OCC randomly selects a broker/dealer that wrote the kind of option being exercised and assigns to the broker/dealer the obligation to satisfy the option. If a party has exercised an option and become an owner of a security within a certain minimum amount of time before that security pays a dividend, the party will receive the dividend.

According to the Complaint, some percentage of options holders regularly fail to exercise their options. Those options are not assigned by the OCC, and therefore some sellers are not required to deliver the security on which

Rabin v. John Doe Market Makers, --- F.Supp.3d ---- (2015)
2015 WL 3755298

the unassigned option is based. Complaint ¶ 27. An option seller who does not have to deliver a security because the option was not assigned can collect a dividend paid by that security. The Complaint avers, "[t]he measure of these unexercised options is the contract's 'open interest.' " Complaint ¶ 27.

Certain market makers, the Complaint alleges, have used privileges provided by their status, such as the ability to simultaneously buy and sell the same numbers of options, to unfairly win a large share of the open interest. These market makers have allegedly executed transactions with each other buying and selling large numbers of options in matched trades. The trades are many times larger than the rest of the pool of outstanding options, and because of their disproportionate size, the large trades make it likely that the market makers will be assigned by the OCC most of the "open interest" and collect most of the security's dividend while exposing themselves to little or no risk. Complaint ¶ 28.

**\*2** Plaintiff Rabin argues that this practice injures "retail investors" such as himself who had also purchased options because their share of the "open interest" is diminished by the market makers' large matched trades. Rabin argues that the market makers have violated federal securities laws and that the retail investors injured by the trades are a class entitled to relief.

## II. Procedure
Rabin filed a Complaint alleging violations of Section 10(b) of the Exchange Act and Rule 10b–5 as well as unjust enrichment. The Private Securities Litigation Reform Act (PSLRA) required Rabin, after filing the Complaint, to publicize a notice of the action and afford other potential members of the purported class the opportunity to file their own motions to be appointed as lead plaintiff. 15 U.S.C. § 78u–4; Manual for Complex Litigation (Fourth) § 31.3 (2004). In this case, only one other party filed such a motion: Freshwater Global Alpha Fund, L.P. ("Freshwater"). Freshwater is an institutional investor. Plaintiff Rabin has also filed a motion to be appointed as lead plaintiff for the class action. Both parties have also asked the court to appoint their current counsel as lead counsel for the class.

## III. Discussion
The Third Circuit has explained that the PSLRA "establishes a two-step process for appointing a lead plaintiff: the court first identifies the presumptive lead plaintiff, and then determines whether any member of the putative class has rebutted the presumption." *In re Cendant Corp. Litig.,* 264 F.3d 201, 262 (3d Cir.2001).

### a. Lead Plaintiff

#### i. The Presumptive Lead Plaintiff
Federal law identifies three requirements that a party must satisfy to become the presumptive lead plaintiff. First, the party "has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);" the party "has the largest financial interest in the relief sought by the class; and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). Both movants here satisfy the first requirement. Rabin filed the original Complaint, and Freshwater filed its motion for appointment as lead counsel in response to the notice that Rabin publicized. I must focus then on identifying the party with the greatest financial interest. Once I have identified the party with the largest financial interest, I must determine if that party also satisfies Rule 23's requirements. If the party both has the greatest interest and satisfies Rule 23, that party will be the presumptive lead plaintiff. To make this determination, I "may and should consider the pleadings that have been filed, the movant's application, and any other information that the court requires to be submitted." *Cendant,* 264 F.3d at 264.

#### 1. Financial Interest
Many factors can be relevant in determining the size of a party's "financial interest in the relief sought by the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb). The Third Circuit in *Cendant* articulated three:

> **\*3** (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs.

*Cendant,* 264 F.3d at 262. Here, because of the type of unfair practices alleged, the losses to the parties because of the market makers alleged conduct is a critical factor to consider.

Movants here advocate for two different models for calculating damages. In a shocking (shocking!) coincidence, Rabin's model for calculating damages shows Rabin has the largest financial interest, and

Freshwater's model shows Freshwater has the largest interest.

Rabin's model calculates his loss at $168.68, and Freshwater's at $67.52. Rabin's Memorandum in Further Support of his Motion for Appointment as Lead Counsel at 3. Rabin details the steps of making these calculations, first calculating the amounts retail investors would have expected without the market makers' large trades on certain days and then calculating the amounts retail investors expected after the large trades. *Id.* at 4–10.

Freshwater's model puts its loss either above $20,000 or above $4,000, depending on whether the calculation accounts for premiums gained from selling options. The model finds Rabin either lost $3,224 or gained about $5000 depending on whether premiums are included. Freshwater explains that it determines these losses by calculating the premium a party gains by selling options less the dividends it would have received if the options it sold had not been called.

Rabin offers several criticisms of Freshwater's model. Rabin argues Freshwater errs in assuming that a party would lose an entire potential dividend because of the market makers' conduct. The alleged fraud only reduces likelihood of particular options not being assigned to options sellers. The fraud thereby likely reduces, but does not necessarily simply extinguish, an option writer's dividend payment when some options are assigned to the writer. Rabin also argues Freshwater incorrectly includes certain options regardless of whether market makers were engaging in unfair transactions at that particular time. Retail investors could only be damaged, according the Complaint, when market makers were engaging in transactions massive enough to increase their chances of receiving dividends. These flaws and others, according to Rabin, introduce irrelevant variables into Freshwater's calculations and overlook details of the Complaint's allegations.

Freshwater, in turn, argues that Rabin's calculations require the Court to investigate the merits of the Complaint more deeply than it should at this stage. Freshwater contends Rabin's calculations "are unreliable and flawed since they rely on a variable that, at this point in the litigation and without the benefit of discovery, cannot be determined: the number of options traded by the defendants on the day before the ex-dividend date." Freshwater's Reply in Further Support of its Motion at 1. According to Freshwater, it is too early in the litigation to determine when precisely allegedly improper trades were occurring.

**\*4** I find I am persuaded by Rabin's arguments. I am not delving into the merits of the allegations at this point. *See In re BP, PLC Sec. Litig.,* 758 F.Supp.2d 428, 434 (S.D.Tex.2010) (observing courts should "avoid[ ] the merits of the claims" when selecting a lead plaintiff). Rather, I find that Rabin has offered a method of calculating loss that reflects the nuances of the alleged scheme, while Freshwater has proposed a method of calculation that paints with too broad a brush. I do not need to examine the merits of the Complaint's allegations or credit unsupported factual allegations to recognize that a damages model that does not incorporate important features of the alleged fraud is not a sufficiently accurate model.

Because I credit Rabin's model, I find that Rabin is the movant with the greatest financial interest in the litigation. I now turn to the question of whether Rabin also satisfies the requirements of Rule 23.

2. Rule 23 Typicality and Adequacy

The plaintiff-selection statute requires a movant meet the requirements of Federal Rule of Civil Procedure 23. The Third Circuit has explained that only two of Rule 23's provisions are relevant in this context. *Cendant,* 264 F.3d at 263. The movant must have "claims or defenses [that] are typical of the class" and the movant must "be able to 'fairly and adequately protect the interests of the class.' " *Id.* (citing Fed.R.Civ.P. 23). At this stage of the analysis, a movant need only provide a *prima facie* showing of the typicality of its claims and the adequacy of its representation of the class. *Id.*

Rabin's claims are typical of the class. Rabin argues that he and all other retail investors engaging in certain options trades were injured by the same conduct. "A plaintiff's claim is typical if it arises from the same event, practice or course of conduct that gives rise to the claims of other class members and if his or her claims are based on the same legal theory." Newberg on Class Actions § 3:29 (5th ed.). "To evaluate typicality, we ask 'whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class.' " *Beck v. Maximus, Inc.,* 457 F.3d 291, 295–96 (3d Cir.2006). Here, under the facts alleged, Rabin's claims and the claims of other class members rely on the same legal theories.

Rabin has also sufficiently shown he is adequate to represent the class. The Third Circuit in *Cendant* identified several factors courts should consider when determining whether an individual person or entity is an adequate representative of a class. A court should

consider: (1) whether the potential representative "has the ability and incentive to represent the claims of the class vigorously;" (2) whether the potential representative "has obtained adequate counsel;" (3) whether "there is [a] conflict between [the movant's] claims and those asserted on behalf of the class;" and finally, (4) "whether the movant has demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement with that counsel." *Cendant,* 264 F.3d at 265–66.

**\*5** With respect to the first factor, Rabin has averred he is an attorney and investor with experience with securities markets, and that he has a financial interest in his claims. As to the adequacy of Rabin's selected counsel, the Complaint and briefs submitted by Rabin are well constructed and clear, the counsel are experienced, and I see no reason to be concerned that counsel are not adequate.

I do not find any conflicts between Rabin's claims and those asserted on behalf of the class, and Rabin has shown a willingness to select competent class counsel. The fact that Rabin is an attorney as well as an investor suggests he is capable of negotiating a reasonable retainer agreement with his counsel.

### ii. Rebutting the Presumption

Rebutting the presumption is a high bar to clear. "[T]he question *is not* whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[ ] and adequate[ ]' job." *Cendant,* 264 F.3d at 268.

Freshwater offers several reasons that Rabin would not be able to adequately represent the class. For instance, Freshwater argues Rabin attempts to restrict the class by limiting the transactions that are relevant and thereby takes an action against the class's interests. Freshwater Reply Memorandum in Further Support of its Motion for Appointment as Lead Plaintiff at 3, n. 3. I disagree that Rabin has taken positions that are against the class's interests. Rather, I find that Rabin, by explaining that some class members' transactions were impacted by large trades by market makers and some transactions were not, appropriately recognizes the boundaries of class members' claims.

Freshwater also argues that the PLSRA favors institutional investors over individuals. There is certainly persuasive evidence that "[t]he drafters of the PSLRA

sought to reduce the influence of lawyers on class action securities by weighting the determination of large institutional investors." *City of Monroe Employees Retirement Sys. v. Hartford Financial Servs. Group, Inc.,* 269 F.R.D. 291, 294 (S.D.N.Y.2010). The Senate Banking Committee drafting the PSLRA acknowledged it intended to "increase the likelihood that institutional investors will serve as lead plaintiffs." S.Rep. No. 104–98, 11 (1995). However, this indication of preference should not be carried too far. The Committee also explained that it created a mechanism for carrying out this objective: "requiring the court to presume that the member of the purported class with the largest financial stake in the relief sought is the 'most adequate plaintiff.' " *Id.* Because institutional investors are "America's largest shareholders," the Committee reasoned that large institutions would tend to have the largest financial interests in the litigation and consequently best represent the interests of the class. *Id.* The mechanism discussed is codified at 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb), and it explicitly directs courts to choose lead plaintiffs with the largest financial interest in the relief sought by the class. Thus, the most important consideration for courts is the size of a movant's financial interest. This will often favor a large institutional investor, but may not always do so. Freshwater's status as a corporate entity rather than as a natural person does not therefore show it should be lead plaintiff.

**\*6** To summarize, I do not find any of Freshwater's arguments so persuasive that Freshwater can overcome the high bar articulated in *Cendant.* Accordingly, Rabin shall be appointed as lead plaintiff for the class.

### b. Lead Counsel

Having determined that Rabin shall be appointed lead plaintiff, I consider whether Rabin may select its current counsel as lead counsel for the class. The PLSRA provides, "The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3) (B)(v). The Third Circuit wrote, "the Reform Act evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." *Cendant,* 264 F.3d at 276. "The ultimate inquiry is whether the lead plaintiff's choices were the result of a good faith selection and negotiation process and were arrived at via meaningful arm-length bargaining." *Id.* Having reviewed movants' submissions to the Court, including the firm biographies, I find no basis to reject the presumption in favor of approving Rabin's selection of counsel. *See In re: Sterling Financial Corp. Securities Class Action,* 2007 WL 4570729 at \*8

**Rabin v. John Doe Market Makers,** --- F.Supp.3d ---- (2015)

2015 WL 3755298

(E.D.Pa. Dec.21, 2007) ("I have reviewed the ... firm biography, and find the firm to have significant experience in complex litigation in general, and securities class action litigation in particular. I will therefore not disturb the lead plaintiffs' choice of lead counsel."); *Zhu v. UCBH Holdings, Inc.,* 682 F.Supp.2d 1049, 1056 (N.D.Cal.2010) (finding lead plaintiff's selection of lead counsel had "the requisite ability and experience.").

An appropriate order follows.

### ORDER GRANTING PLAINTIFF I. STEPHEN RABIN'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL

This Court, having considered the motion of plaintiff I. Stephen Rabin ("Movant") for Appointment as Lead Plaintiff and for Approval of Movant's Selection of Lead Counsel, the memorandum of law submitted in support thereof, and the Declaration of Lawrence Deutsch submitted in support thereof, and good cause appearing therefor,

**IT IS HEREBY ORDERED** as follows:

1. I. Stephen Rabin is appointed as Lead Plaintiff. Lead Plaintiff satisfies the requirements for Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").

2. Lead Plaintiff has selected and retained Lawrence Deutsch and Robin Switzenbaum of Berger & Montague, P.C. and Bragar Eagel & Squire, P.C. to serve as Lead Counsel in this class action. The Court approves the selection of Lawrence Deutsch and Robin Switzenbaum of Berger & Montague, P.C. and Bragar Bagel & Squire, P.C. to serve as Plaintiffs Lead Counsel.

3. Plaintiff's Lead Counsel shall have the following responsibilities and duties, to be carried out either personally or through counsel whom Lead Counsel shall designate:

   **\*7** (a) to coordinate the briefing and argument of motions;

   (b) to coordinate the conduct of discovery proceedings;

   (c) to coordinate the examination of witnesses in depositions;

   (d) to coordinate the selection of counsel to act as spokesperson at pretrial conferences;

   (e) to call meetings of the plaintiffs' counsel as they deem necessary and appropriate from time to time;

   (f) to coordinate all settlement negotiations with counsel for defendants;

   (g) to coordinate and direct the pretrial discovery proceedings and the preparation for trial and the trial of this matter and to delegate work responsibilities to selected counsel as may be required; and

   (h) to supervise any other matters concerning the prosecution, resolution or settlement of the class Action.

4. No motion, request for discovery, or other pretrial proceedings shall be initiated or filed by any plaintiff without the approval of Lead Counsel, so as to prevent duplicative pleadings or discovery by plaintiff. No settlement negotiations shall be conducted without the approval of Lead Counsel.

5. Lead Counsel shall have the responsibility of receiving and disseminating Court orders and notices.

6. Lead Counsel shall be the contact between plaintiff's counsel and defendants' counsel, as well as the spokesperson for plaintiffs counsel, and shall direct and coordinate the activities of plaintiffs' counsel.

7. Defendants shall serve all papers on plaintiffs by serving a copy on Lead Counsel via filing on the electronic docket or via email when no docket entry is made. Plaintiff shall serve all papers on defendants by filing on the electronic docket or via email when no electronic docket entry has been made.

8. During the pendency of this litigation, or until further order of this Court, the parties shall preserve all documents within their possession, custody, or control which is relevant to the subject matter of the pending litigation, including computer-generated and stored information, computerized data, and electronic mail.

**IT IS SO ORDERED.**

**All Citations**

--- F.Supp.3d ----, 2015 WL 3755298

**Rabin v. John Doe Market Makers, --- F.Supp.3d ---- (2015)**

2015 WL 3755298

**End of Document**                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.