UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE CTI BIOPHARMA CORP.
SECURITIES LITIGATION

Case No. C16-216RSL

ORDER APPOINTING DAFNA AS
LEAD PLAINTIFF AND
APPROVING BERNSTEIN
LITOWITZ AS LEAD COUNSEL

This matter comes before the Court on two competing motions for appointment of lead plaintiff and approval of lead counsel: (1) "Motion of DAFNA LifeScience, LP and DAFNA LifeScience Select, LP for Appointment as Lead Plaintiff and Approval of its Selection of Lead Counsel," Dkt. # 8, and (2) "Renewed Motion of Movant Medical Opportunities Fund to be Appointed Lead Plaintiff and to Approve Proposed Lead Plaintiff's Choice of Lead Counsel," Dkt. # 32. Having reviewed the motions of the parties and all materials filed in support of and opposition thereto, and having heard oral argument on August 25, 2016, the Court GRANTS DAFNA LifeScience, LP and DAFNA LifeScience Select's motion (Dkt. # 8) and DENIES Medical Opportunities Fund's motion for appointment as lead plaintiff and approval of lead counsel (Dkt. # 32).

## BACKGROUND

This is a putative shareholder class action against CTI BioPharma Corp. and certain of its

ORDER APPOINTING LEAD
PLAINTIFF AND LEAD COUNSEL - 1

senior officers. The complaint accuses defendants of violations of the Securities Exchange Act and the Securities Act for making false or misleading statements about the CTI's business, operations, and prospects. The alleged false or misleading statements related to pacritinib, a drug in development by CTI that was placed on a partial, then full, clinical hold by the U.S. Food and Drug Administration before CTI withdrew the NDA for it. Complaints related to these events were filed in this district and in the Southern District of New York. The action filed in the Southern District of New York was transferred to this district and consolidated with the action filed here. Dkt. # 31. Both DAFNA LifeScience, LP and DAFNA LifeScience Select, LP (together, DAFNA Funds or DAFNA) and Medical Opportunities Fund have moved for appointment as lead plaintiff.

**DISCUSSION**

**A. Appointment of Lead Plaintiff Under the PSLRA**

Under the Private Securities Litigation Reform Act (PSLRA), the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4(3)(B)(i). The presumptively most adequate plaintiff is the one who "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." Id. "In other words, the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit. It must then focus its attention on that plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" In re Cavanaugh, 306 F.3d 726, 730 (9th Cir. 2002). When the Court makes its initial determination regarding the presumptively most adequate plaintiff, it relies upon the presumptive lead plaintiff's complaint and sworn certification rather than assessing the contentions of the party or parties opposing the appointment. Id. After this initial determination, other plaintiffs have an opportunity to rebut

ORDER APPOINTING LEAD
PLAINTIFF AND LEAD COUNSEL - 2

the presumption by showing that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render the plaintiff incapable of adequately representing the class. Id.; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

**B. Presumptively Most Adequate Plaintiff**

The first issue the Court must address is which of the two competing lead plaintiffs has the largest financial interest in the relief sought by the class. The DAFNA Funds contend that DAFNA has the largest financial interest by virtue of having suffered approximately $1.39 million in losses. Dkt. # 8 at 4. DAFNA LifeScience, LP suffered approximately $830,737.37 in losses, while DAFNA LifeScience Select, LP suffered approximately $560,622.33 in losses. Dkt. # 9-2 at 2-3. Medical Opportunities Fund counters that the losses of the DAFNA entities should not be aggregated, and that if they are considered separately, neither of the DAFNA entities' losses exceeds Medical Opportunity Fund's loss of approximately $1,007,829. Dkt. ## 32-2 at 13; 33-2 at 2.[1]

The PSLRA allows a "group of persons" to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). While there "is no question that a group of investors can serve as 'lead plaintiff,'" courts have diverged in their analyses regarding whether it is permissible for unrelated investors to aggregate their losses for the purpose of amassing the largest financial interest. See Frias v. Dendreon Corp., 835 F. Supp. 2d 1067, 1072-74 (W.D. Wash. 2011) (collecting cases). Even in the case of previously unrelated investors, however, "courts have recognized that 'a pre-existing relationship between investors that comprise a group is not required if the resulting group is small and cohesive enough such that it can adequately control and oversee the litigation." Cook v. Atossa Genetics, Inc., 2014 WL 585870, at *6 (W.D. Wash.

---

[1] Neither party disputes the other's calculation of its financial interest, and the Court therefore accepts the parties' methodology. See Cavanaugh, 306 F.3d at 730 n.4 (declining to specify a method for calculating each potential lead plaintiff's financial stake, so long as the "accounting methods are both rational and consistently applied"); Dkt. ## 9-2 (DAFNA's loss analysis); 33-2 (Medical Opportunities Fund's loss analysis).

ORDER APPOINTING LEAD
PLAINTIFF AND LEAD COUNSEL - 3

Feb. 14, 2014) (internal quotation marks and alterations omitted).  Courts in this circuit have recognized that it is appropriate to aggregate the claims of plaintiffs aligned together.  In re Ride, Inc., Sec. Litig., 1997 WL 33628677, at *1 (W.D. Wash. Aug. 5, 1997); see also City of Ann Arbor Employees' Ret. Sys. v. Accuray Inc., 2009 WL 3517667, at *2 (N.D. Cal. Oct. 26, 2009).

In this case, it is clear that the two DAFNA entities have a relationship that predates this litigation and have not been "assembled as a makeshift by attorneys for the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the action." Varghese v. China Shenghuo Pharm. Holdings, Inc., 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008). The DAFNA Funds are both Master Funds of DAFNA Fund, L.P., and share the same general partner and investment manager, DAFNA Capital.  Dkt. # 35-1 at 3.  Both DAFNA Funds became Delaware domestic limited partnerships in December 2013, and limited partnership interests were offered to investors at the same time and as part of the same offering.  Id. at 4.

For the foregoing reasons, it is appropriate to aggregate the losses of DAFNA Funds, making them the presumptively most adequate plaintiff based upon their financial interest in the litigation and representations regarding typicality and adequacy.  See Dkt. # 8.  The Court therefore now turns to Medical Opportunities Fund's contention that DAFNA is subject to unique defenses, rendering DAFNA unsuitable as lead plaintiff.

**C. Unique Defenses**

The presumption regarding the most adequate lead plaintiff "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff . . . is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  The burden at this stage is not to prove the defense, but "only to show a degree of likelihood that a unique defense might play a significant role at trial." In re Netflix, Inc., Sec. Litig., 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012) (citing Beck v. Maximus, Inc., 457 F.3d 291, 300 (3d Cir.2006)); see also Hanon v. Dataproducts Corp., 976 F.2d 497, 508-09 (declining to grant named plaintiff's motion for class

ORDER APPOINTING LEAD
PLAINTIFF AND LEAD COUNSEL - 4

certification because it was "predictable that a major focus of the litigation [would] be on a defense unique to him"). "The point of this requirement is not to adjudicate the case before it has even begun, but rather to protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole." Id. (citing Hanon, 976 F.2d at 508).

In its motion for appointment as lead plaintiff, Medical Opportunities Fund contends that "DAFNA is subject to unique defenses based on its acquisition of the vast majority of its CTI Biopharma shares through conversions of its CTI Biopharma preferred stock to common stock at set prices not even established by market prices of CTI Biopharma common stock." Dkt. # 32-2 at 18. The mere fact that DAFNA acquired the majority of its shares as preferred stock that was converted to common stock during the class period would not subject it to unique defenses. The evidence before the Court suggests that this defense is not unique. Medical Opportunities Fund "also acquired common stock through a preferred stock conversion[,]" and there is no reason for the Court to believe these two entities were the only ones who acquired common stock through this method. Dkt. # 32-2 at 19.

However, in Medical Opportunities Fund's reply, it changes its argument, asserting that:

> DAFNA has no recoverable losses for any of its direct purchases of common stock. If it is determined that DAFNA's converted shares were not 'purchased' or were purchased but not in reliance on the market price of CTI stock, the result will be that DAFNA will have suffered no damages and lacks standing to prosecute the claims. . . . [A]ll of DAFNA's claimed losses result from common shares that were converted from preferred CTI BioPharma Corp. . . . shares to CTI common shares. . . . Although DAFNA also purchased CTI stock on the open market during the Class Period, it also sold all these shares during the Class Period and prior to any corrective disclosure.

Dkt. # 38 at 2 (emphasis removed).[2]  Under Dura Pharmaceuticals, Inc. v. Broudo, losses suffered prior to a corrective disclosures in a case brought under Section 10(b) of the Securities Exchange Act are not compensable because the losses were incurred while the stock price

---

[2] Because Medical Opportunities Fund raised this argument for the first time on reply, the Court has considered DAFNA's surreply, Dkt. # 40-1.

ORDER APPOINTING LEAD
PLAINTIFF AND LEAD COUNSEL - 5

remained artificially inflated.  544 U.S. 336, 346-47 (2005).  Medical Opportunities Fund details, and DAFNA does not refute, DAFNA's purchases over the course of the class period, which demonstrate that "DAFNA liquidated its entire position of open market-purchased CTI stock by May 2015, well within the Class Period."  Dkt. # 38 at 4-5; see generally Dkt. # 40-1.  Therefore, Medical Opportunities Fund contends, DAFNA may be subject to unique defenses such as arguments that it did not rely on the market price of CTI common stock and that it may not qualify as a "purchaser" under securities laws.  Dkt. # 38 at 7.

      The potential defense that DAFNA did not rely on the market price of CTI common stock in purchasing preferred stock would, alone, be insufficient to rebut the presumption that DAFNA is the most qualified plaintiff.  See McEwen v. Digitran Sys., Inc., 160 F.R.D. 631, 637 (D. Utah 1994) ("The preferred shares were convertible into common stock.  Therefore, what an investor was willing to pay for such shares depended upon the value of the common stock plus some premium for the additional privileges granted to preferred shareholders."); see also Armour v. Network Associates, Inc., 171 F. Supp. 2d 1044, 1053-54 (N.D. Cal. 2001) (potential, speculative defense insufficient to overcome lead plaintiff presumption).  Not only is this defense speculative, it is also not unique since it would apply to any preferred stock purchaser.

      More persuasive is Medical Opportunities Fund's contention that DAFNA may be subject to the unique defense that it lacks standing to pursue claims under the Exchange Act.  DAFNA appears to concede that standing to pursue the Exchange Act claims may become an issue in the litigation.  DAFNA argues that Medical Opportunities Fund ignores that DAFNA will assert claims under both the Securities Act of 1933 and the Exchange Act, and that Medical Opportunities Fund's argument is "irrelevant to its Securities Act claims." Dkt. # 40-1.  As noted above, Medical Opportunities Fund has submitted unrebutted proof that under Dura, DAFNA did not suffer any losses as a result of its purchase of CTI common stock on the open market.  Even assuming, however, that DAFNA cannot pursue Exchange Act claims due to lack of standing, that does not preclude DAFNA from serving as lead plaintiff.  As the Second Circuit

ORDER APPOINTING LEAD
PLAINTIFF AND LEAD COUNSEL - 6

has observed:

> Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action. Rather, because the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim.

Hevesi v. Citigroup Inc., 366 F.3d 70, 82 (2d Cir. 2004).  Potential standing issues with respect to certain claims do not preclude appointment as lead plaintiff and can be resolved by the appointment of additional class representatives as the litigation proceeds.  Schueneman v. Arena Pharm., Inc., 2011 WL 3475380, at *5 (S.D. Cal. Aug. 8, 2011).  Therefore, even the potentially unique standing defense is unlikely to play a major role in the litigation since it would not be case-dispositive for DAFNA and would, as previously noted, largely rely on briefing and argument applicable to all preferred stock purchasers, rather than any issue unique to DAFNA.

Moreover, courts "often appoint purchasers of one type of securities to represent purchasers of other types of securities of the same issuer where the interests of those purchasers are aligned[,]" In re Juniper Networks, Inc. Sec. Litig., 264 F.R.D. 584, 594 (N.D. Cal. 2009), and Medical Opportunities Fund has not presented proof that the interests of class members who purchased preferred stock or converted preferred stock to common stock are not aligned with those who purchased common stock on the open market.  See also Hall, 2009 WL 648626, at *4-5 (noting that many courts have appointed options traders as lead plaintiffs to represent the interests of common stockholders and collecting cases finding that their interests are sufficiently aligned).  While in some cases it may be inappropriate for a purchaser of one type of security to represent the purchaser of another type of security, the cases cited by Medical Opportunities Fund do not persuade the Court that it is inappropriate to appoint a preferred stock purchaser as lead plaintiff in this case.  The cases cited by Medical Opportunities Fund (Dkt. # 38 at 7-8) address representation issues on class certification, not appointment as lead plaintiff.  See In re Countrywide Fin. Corp. Sec. Litig., 273 F.R.D. 586, 601 (C.D. Cal. 2009); Goldstein v. Cytogen Corp., 1993 WL 274246, at *5 (D.N.J. June 7, 1993); Weisfeld v. Spartans Indus., Inc., 58

ORDER APPOINTING LEAD
PLAINTIFF AND LEAD COUNSEL - 7

F.R.D. 570, 582 (S.D.N.Y. 1972). As discussed in the preceding paragraph, these are two separate inquiries.

Finally, Medical Opportunities Fund asserts that "preferred shares are not presently part of this lawsuit." Dkt. # 38 at 8. Medical Opportunities Fund's position is seriously undermined by the fact that it also included preferred shares in its calculation of losses sustained. See Dkt. # 32-2 at 19 n.3 ("While Medical Opportunities Fund also acquired common stock through a preferred stock conversion, it only acquired 158,400 shares by this method, which is only a small portion of the 890,400 shares Medical Opportunities Fund acquired."); 33-2 (Medical Opportunities Fund's loss analysis on 890,400 shares). Moreover, the complaint broadly asserts claims on behalf of purchasers of CTI BioPharma "securities," without limitation. See, e.g., Dkt. # 1 at 2; cf. Hall v. Medicis Pharm. Corp., 2009 WL 648626, at *5 (D. Ariz. Mar. 11, 2009) (rejecting argument that class of "securities" purchasers did not include options holders). To the extent that additional factual allegations may be necessary, including in support of the Securities Act claims, plaintiffs will have an opportunity to file a consolidated and amended complaint.

For the reasons discussed in this section, the Court finds that the presumption that DAFNA is the most adequate lead plaintiff is unrebutted and appoints DAFNA as lead plaintiff.

**D. Approval of Lead Counsel**

Once the Court has designated a lead plaintiff, the plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). DAFNA has selected Bernstein Litowitz Berger & Grossmann LLP as lead counsel. Dkt. # 8 at 12. No plaintiff has objected to DAFNA's selection of Bernstein Litowitz as lead counsel, and the firm's resume indicates that it is well-qualified to serve as lead counsel in this action. See Dkt. # 9-4. Accordingly, the Court appoints Bernstein Litowitz as lead counsel in this matter in accord with DAFNA's request.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the "Motion of DAFNA LifeScience, LP

1  and DAFNA LifeScience Select, LP for Appointment as Lead Plaintiff and Approval of its
2  Selection of Lead Counsel" (Dkt. # 8) and DENIES the "Renewed Motion of Movant Medical
3  Opportunities Fund to be Appointed Lead Plaintiff and to Approve Proposed Lead Plaintiff's
4  Choice of Lead Counsel" (Dkt. # 32).  The Court further orders the parties to meet and confer
5  and file a joint status report no later than Monday, September 26, 2016, which sets forth the
6  parties' proposed schedule for the filing of a consolidated amended complaint as well as
7  responses thereto.

9      DATED this 2nd day of September, 2016.

*（signature）*
Robert S. Lasnik
United States District Judge