The Honorable Robert S. Lasnik

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

IN RE CTI BIOPHARMA CORP.
SECURITIES LITIGATION

Case No. 2:16-cv-00216-RSL

<u>CLASS ACTION</u>

**NOTE ON MOTION CALENDAR:**
(Settlement Hearing Date)
February 1, 2018 at 8:30 a.m.

**LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF THE**
**PROPOSED SETTLEMENT, THE PLAN OF ALLOCATION, AND**
<u>**LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES**</u>

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I.   INTRODUCTION ........................................................................................................ 1

II.  THE SETTLEMENT WARRANTS FINAL APPROVAL ......................................... 3

     A.   The Standards For Judicial Approval Of Class Action Settlements ..................... 3

     B.   The Settlement Meets The Ninth Circuit Standard For Approval ........................ 4

          1.   The Settlement Is The Result Of Arm's-Length Negotiations And
               A Mediator's Recommendation .................................................................. 4

          2.   Review Of All Relevant Factors Supports Final Approval Of The
               Settlement ................................................................................................... 5

               a)   The Substantial Risks To Achieving A Litigated Judgment
                    And Recovering On That Judgment ................................................. 5

               b)   The Expense, Complexity, And Likely Duration Of Further
                    Litigation ......................................................................................... 7

               c)   The Risk Of Maintaining Class Action Status Through Trial
                    ......................................................................................................... 8

               d)   The Amount Obtained In Settlement ............................................... 9

               e)   The Stage Of The Proceedings And Information Available ......... 10

               f)   The Experience And Views Of Lead Plaintiff And Lead
                    Counsel .......................................................................................... 11

               g)   The Reaction Of The Settlement Class To The Proposed
                    Settlement ...................................................................................... 13

III. THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND
     ADEQUATE ................................................................................................................ 13

IV.  THE SETTLEMENT CLASS RECEIVED ADEQUATE NOTICE .............................. 14

V.   LEAD COUNSEL'S FEE AND EXPENSE REQUEST IS FAIR AND
     REASONABLE ........................................................................................................... 15

     A.   An Award Of Attorneys' Fees From The Common Fund Obtained
          Is Appropriate Under Applicable Precedent ...................................................... 16

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

B. Factors Considered By Courts In The Ninth Circuit Support Approval Of The Requested Fee As Fair And Reasonable .................................. 17

1. The Results Achieved, In The Face Of Significant Risks, Support The Requested Fee ...................................................................... 17

2. The Skill Required And Quality Of Plaintiffs' Counsel's Work Performed Support The Requested Fee ...................................... 18

3. The Contingent Nature Of The Fee And The Financial Burden Carried By Plaintiffs' Counsel Support The Requested Fee ................... 19

4. The Requested Fee Is Comparable To Fee Awards Approved In Cases With Similar Recoveries .................................................. 20

5. The Reaction Of The Settlement Class To Date Supports The Requested Fee ...................................................................... 21

6. A Lodestar Cross-check Confirms The Requested Fee Is Reasonable ........................................................................... 22

VI. PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE ................................... 23

VII. CONCLUSION .......................................................................................... 25

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,          ii
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Activision Sec. Litig.,*
723 F. Supp. 1373 (N.D. Cal. 1989) ........................................................................16

*Aichele v. City of Los Angeles,*
2015 WL 5286028 (C.D. Cal. Sept. 9, 2015) ..........................................................21

*In re Apple iPhone/iPod Warranty Litig.,*
40 F. Supp. 3d 1176, 1181 (N.D. Cal. 2014) ...........................................................16

*Barbosa v. Cargill Meat Sols. Corp.,*
297 F.R.D. 431 (E.D. Cal. 2013) .............................................................................19

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980)..................................................................................................16

*In re BP Prudhoe Bay Royalty Tr. Sec. Litig.,*
No. C06-1505 MJP, slip op. (W.D. Wash. June 30, 2009), ECF No. 127...............21

*In re Cell Pathways, Inc., Sec. Litig. II,*
2002 WL 31528573 (E.D. Pa. Sept. 23, 2002) ........................................................11

*Churchill Vill., LLC v. Gen. Elec.,*
361 F.3d 566 (9th Cir. 2004) .....................................................................................3

*City of Roseville Emps.' Ret. Sys. v. Micron Tech., Inc.,*
2011 WL 1882515 (D. Idaho Apr. 28, 2011) ..........................................................23

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1268 (9th Cir. 1992) ..............................................................................3, 13

*In re CV Therapeutics, Inc., Sec. Litig.,*
2007 WL 1033478 (N.D. Cal. Apr. 4, 2007) ...........................................................24

*In re Dendreon Corp. Class Action Litig.,*
C11-01291JLR, slip op. (W.D. Wash. Aug. 2, 2013), ECF No. 111 ......................15

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
2007 WL 2416513 (N.D. Cal. Aug. 16, 2007) .........................................................19

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,                iii
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

*In re ECOtality, Inc. Sec. Litig.*,
   2015 WL 5117618 (N.D. Cal. Aug. 28, 2015) .......................................................22

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980) ..........................................................................11

*Fischel v. Equitable Life Assurance Soc'y*,
   307 F.3d 997 (9th Cir. 2002) .............................................................................20

*In re Galena Biopharma, Inc. Sec. Litig.*,
   2016 WL 3457165 (D. Or. June 24, 2016) .......................................................20

*Glass v. UBS Fin. Servs., Inc.*,
   2007 WL 221862 (N.D. Cal. Jan. 26, 2007),
   *aff'd*, 331 Fed. App'x 452 (9th Cir. 2009) ...............................10, 11, 17, 20, 21

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .......................................................................3, 20

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
   2010 WL 4027632 (S.D. Cal. Oct. 14, 2010) ..................................................15

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) .....................................7, 12, 18, 20

*Hicks v. Stanley*,
   2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ....................................................5

*Hughes v. Microsoft Corp.*,
   2001 WL 34089697 (W.D. Wash. Mar. 26, 2001) ............................................15

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007)......................................................6, 15, 20

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003)..................................................4

*In re Int'l Rectifier Corp. Sec. Litig.*,
   CV 07-02544-JFW, slip op. (C.D. Cal. Feb. 8, 2010), ECF No. 316 ....................21

*Knight v. Red Door Salons, Inc.*,
   2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ..................................................21, 24

*Linney v. Cellular Alas. P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ..........................................................................10

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,    iv
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

*Lundell v. Dell, Inc.*,
   2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) ..................................................................4

*In re Maxim Integrated Prods., Inc. Sec. Litig.*,
   Case No. 08-832 JW, slip op. (N.D. Cal. Nov. 1, 2010), ECF No. 312 ................................24

*McGuire v. Dendreon Corp.*,
   Case No. C07-800 MJP, slip op. (W.D. Wash. Dec. 20, 2010), ECF No. 235........................20

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ......................................................................3, 10, 13

*In re Mercury Interactive Corp. Sec. Litig.*,
   2011 WL 826797 (N.D. Cal. Mar. 3, 2011)............................................................23

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .....................................................................7, 12

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972)................................................................................9

*In re Nuvelo, Inc. Sec. Litig.*,
   2011 WL 2650592 (N.D. Cal. July 6, 2011)........................................................16, 19

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) .............................................................................3, 4

*Oh v. Chan*,
   CV 07-04891 DDP, slip op. (C.D. Cal. July 28, 2009), ECF No. 99 ....................................21

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......................................................... *passim*

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ...............................................................................12

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ..............................................................................20

*Pelletz v. Weyerhaeuser Co.*,
   255 F.R.D. 537 (W.D. Wash. 2009) .......................................................................4

*Rabin v. Concord Assets Grp., Inc.*,
   1991 WL 275757 (S.D.N.Y. Dec. 19, 1991) ..............................................................22

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

v

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

*In re Rambus Inc. Derivative Litig.*,
   2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ...................................................10, 13

*Satchell v. Fed. Express Corp.*,
   2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ..........................................................4

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994) ................................................................................15

*In re Skilled Healthcare Grp., Inc. Sec. Litig.*,
   2011 WL 280991 (C.D. Cal. Jan. 26, 2011) ...........................................................6

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ................................................................................3

*In re TD Ameritrade Account Holder Litig.*,
   2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) ......................................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..............................................................................................16

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ...................................................................5, 6, 7, 20

*Vincent v. Reser*,
   2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ....................................................16, 24

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ...................................................................... *passim*

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*
   2016 WL 6248426 (N.D. Cal. Oct. 25, 2016).....................................................9, 10

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ............................................................................17, 19

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005).....................................................................13

*In re WSB Fin. Grp. Sec. Litig.*,
   2009 WL 10677102 (W.D. Wash. Mar. 27, 2009) ................................................20

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,          vi
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

**Statutes**

15 U.S.C. § 77k(e) ......................................................................................................14

15 U.S.C. § 78u-4(a)(4) ..............................................................................................24

15 U.S.C. § 78u-4(a)(6) ..............................................................................................16

**Rules and Other Authorities**

Fed. R. Civ. P. 23 ..........................................................................................................1

Fed. R. Civ. P. 23(c)(2)(B) ..........................................................................................15

Fed. R. Civ. P. 23(e)(2) ................................................................................................3

H.R. Conf. Rep. 104-369 (1995)..................................................................................12

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,     vii
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Lead Plaintiff DAFNA LifeScience, LP and DAFNA LifeScience Select, LP (collectively, "DAFNA" or "Lead Plaintiff") and Lead Counsel Bernstein Litowitz Berger & Grossmann LLP move pursuant to Fed. R. Civ. P. 23 for (i) final approval of the proposed Settlement of the above-captioned securities class action (the "Action"); (ii) approval of the proposed Plan of Allocation for the settlement funds; and (iii) approval of Lead Counsel's request for attorneys' fees and reimbursement of Litigation Expenses, including reimbursement of costs incurred by Lead Plaintiff directly related to its representation of the Settlement Class.[1]

## I.   **INTRODUCTION**

Lead Plaintiff has agreed to settle all claims in this Action in exchange for a cash payment of $20 million. The funds have already been deposited into an escrow account and are earning interest for the benefit of the Settlement Class.  Lead Plaintiff and Lead Counsel respectfully submit that the proposed Settlement is an excellent result for the Settlement Class and satisfies all the standards for final approval under Rule 23 of the Federal Rules of Civil Procedure.  As detailed in the accompanying Declaration of David R. Stickney, the Settlement represents a substantial percentage of likely recoverable damages and is a very favorable recovery given the significant risks in this litigation with respect to liability, damages, and CTI's inability to pay a substantial judgment.[2]

The $20 million recovery was the result of Lead Counsel's diligent prosecution of the Action and the Parties' extensive good-faith settlement negotiations.  ¶ 7.  The Parties participated

---

[1] Unless otherwise stated, capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement, dated September 15, 2017 (the "Stipulation"; ECF No. 106-2), and the accompanying Declaration of David R. Stickney in Support of Lead Plaintiff's Motion for Final Approval of the Proposed Settlement, the Plan of Allocation, and Lead Counsel's Request for Attorneys' Fees and Expenses (the "Stickney Decl." or "Stickney Declaration").  Citations to "¶" in this Motion refer to paragraphs in the Stickney Declaration.

[2] The Stickney Declaration provides a detailed description of, *inter alia*: the history of the Action (¶¶ 13-34); the nature of the claims asserted (¶¶ 20-21); the negotiations leading to the Settlement (¶¶ 27-31, 51-53); the risks and uncertainties of continued litigation (¶¶ 35-50); the terms of the Plan of Allocation for the Settlement proceeds (¶¶ 54-60); and the services Lead Counsel provided for the benefit of the Settlement Class (¶¶ 13-34, 79-85).

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

in two, in-person mediation sessions facilitated by an experienced and well-respected mediator, Jed Melnick of JAMS ADR.  ¶¶ 7, 27-31.  The Settlement's $20 million cash recovery, which represents approximately 25% of the Settlement Class's estimated damages, is well within the range of reasonableness, compares very favorably against other securities class action settlements in recent years, and achieves the certainty of a substantial recovery for the Settlement Class.  ¶¶ 8, 48-50.

The proposed Plan of Allocation equitably distributes the Net Settlement Fund to Settlement Class Members who submit valid Claim Forms.  Lead Counsel developed the Plan of Allocation in consultation with Lead Plaintiff's damages expert, Bjorn Steinholt.  ¶ 55; Ex. 4 (Steinholt Decl.) ¶¶ 4-20.  Mr. Steinholt is a financial economist who has frequently served as an expert in complex securities litigation on damages and loss causation issues.  The Plan of Allocation provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based on a fair and equitable formula detailed in the Notice.

Lead Counsel respectfully submits that its request for attorneys' fees of 20% and reimbursement of $123,211.61 in litigation expenses is fair and reasonable.  Consistent with the PSLRA, Lead Counsel also seeks reimbursement to Lead Plaintiff DAFNA of costs directly related to its efforts on behalf of the Settlement Class in the amount of $18,362.50.  ¶¶ 99-100.  The Settlement and fee request are supported by Lead Plaintiff DAFNA, who closely oversaw the litigation, communicated regularly with Lead Counsel and remained informed throughout the settlement negotiations.  ¶¶ 8, 71; Ex. 2 (Ghodsian Decl.) ¶¶ 3-8.

For the reasons discussed herein, Lead Plaintiff and Lead Counsel respectfully submit that the Settlement and the Plan of Allocation are fair, reasonable, and adequate and should be approved.  In addition, Lead Counsel respectfully submits that the request for attorneys' fees and reimbursement of litigation expenses is also fair and reasonable and should be approved.

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

2

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

## II.     THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.     The Standards For Judicial Approval Of Class Action Settlements

In the Ninth Circuit, "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  It is well-established that "voluntary conciliation and settlement are the preferred means of dispute resolution," and that this is particularly so in class action cases.  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class action may be settled upon notice of the proposed settlement to class members and a court finding, after a hearing, that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  In reviewing a proposed settlement of a class action, courts consider the following non-exclusive factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004); *accord In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 458 (9th Cir. 2000); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.

In addition to considering the substantive fairness, adequacy, and reasonableness of the proposed settlement, courts also consider its procedural fairness to ensure that the settlement is not

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

3

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

the product of fraud or collusion.  *See Officers for Justice,* 688 F.2d at 625; *Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 542 (W.D. Wash. 2009).

**B.**   **The Settlement Meets The Ninth Circuit Standard For Approval**

**1.**   **The Settlement Is The Result Of Arm's-Length Negotiations And A Mediator's Recommendation**

The Parties' settlement negotiations in this case were extensive, and the Settlement was reached only after arm's-length, good-faith negotiations over a nearly six-month period.  These negotiations included two, in-person mediation sessions and the exchange of detailed mediation statements addressing issues of liability, damages, and CTI's financial condition.  ¶¶ 27-30.  The mediation was overseen by Jed D. Melnick, who has mediated over a thousand disputes, including complex securities class actions such as this one.  *See* Ex. 1 (Melnick Decl.), ¶ 3.  Following the second mediation session, the Mediator issued a double-blind mediator's proposal in an attempt to break the impasse.  *Id.* ¶ 8.  The settlement was reached only after Lead Plaintiff made a final non-negotiable demand of $20 million.  Stickney Decl. ¶ 31.

As courts within this Circuit and nationwide have found, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see Lundell v. Dell, Inc.*, 2006 WL 3507938, at *3 (N.D. Cal. Dec. 5, 2006) (approving class action settlement that was "the result of intensive, arms'-length negotiations between experienced attorneys familiar with the legal and factual issues of this case"); *see also In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable").

Mr. Melnick has submitted a declaration describing the Parties' settlement negotiations, which explains how the "entire mediation process involved significant disputed issues and hard-

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

4

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

fought, arm's-length negotiations." Ex. 1 (Melnick Decl.), ¶ 9. Indeed, the Parties did not reach agreement at the initial, or even the second, mediation session, but rather reached agreement only after mediator intervention to break the impasse – facts that further demonstrate that the Settlement was the product of arm's-length negotiations. *See, e.g., Hicks v. Stanley*, 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005) ("A breakdown in settlement negotiations can tend to display the negotiation's arms-length and non-collusive nature.").

In sum, the arm's-length nature of the negotiations supports final approval of the Settlement.

### 2. Review Of All Relevant Factors Supports Final Approval Of The Settlement

#### a) The Substantial Risks To Achieving A Litigated Judgment And Recovering On That Judgment

Courts evaluating proposed class action settlements also consider the strength of the plaintiff's case and the risks of further litigation. *See, e.g., Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). Although Lead Plaintiff and Lead Counsel believe that Lead Plaintiff's claims were meritorious and had confidence in Lead Plaintiff's opposition to the then-pending motions to dismiss, they recognized that numerous risks and uncertainties would accompany further litigation of the Settlement Class's claims.

First, even if Lead Plaintiff were successful through trial, it faced serious risks that it might be unable to collect on a substantial judgment against the CTI Defendants. CTI's financial condition deteriorated during the course of the litigation. On March 2, 2017, CTI reported that its auditor had "substantial doubt about [its] ability to continue as a going concern." CTI Form 10-K, March 2, 2017. CTI further reported that, as of March 2017, it had accumulated a deficit of $2.2 billion, it expected to continue to incur further net losses, and its current cash holdings could fund its operations only into the third quarter of 2017. ¶¶ 6, 42. In addition, the assets of James Bianco

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

5

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1   and the other Individual Defendants are limited, and CTI's liability insurance was a wasting asset

2   that would have been substantially reduced, if not exhausted, by extended litigation.  ¶¶ 6, 43-44.

3   Moreover, the Company has indemnity obligations to the Underwriter Defendants. ¶ 6.

4   Accordingly, if Lead Plaintiff elected to proceed with protracted litigation through trial, there was

5   a substantial risk that CTI might become insolvent and without insurance coverage.  ¶ 45.  In

6   contrast, the proposed Settlement, which obtains all available CTI insurance and additional

7   amounts from the Company itself, allows Lead Plaintiff and the class to maximize the amount of

8   their recovery.  *Id.*

9        Thus, this factor weighs heavily in favor of the Settlement.  *See Torrisi*, 8 F.3d at 1376 (the

10  deteriorating financial condition of the company defendant was the "predominat[ing]" factor

11  supporting the reasonableness of the settlement); *In re Skilled Healthcare Grp., Inc. Sec. Litig.*,

12  2011 WL 280991, at *4 (C.D. Cal. Jan. 26, 2011) (approving settlement where plaintiffs had a

13  well-founded concern that "prolonging [the] action entails a significant risk of not recovering

14  anything at all"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007)

15  (approving settlement where the company defendant lacked money to fund a judgment and its

16  "wasting insurance policies" meant that the "longer litigation went on, less and less money was

17  available to satisfy a judgment or settlement").

18       In addition, as set forth in greater detail in the Stickney Declaration, there were other

19  significant risks with respect to establishing liability, loss causation and damages in the Action.

20  Defendants argued, and would continue to argue at later stages of the proceedings, that they fully

21  disclosed to investors the risks that the Food and Drug Administration ("FDA") might delay or

22  decline to approve a new drug such as pacritinib.  ¶ 37.  In addition, Defendants would argue that

23  their purported failure to disclose mortality data from the PERSIST-1 study was not material

24  because there was no statistically significant imbalance in the mortality rates between the two arms

25  of the PERSIST-1 study.  ¶ 36.  Defendants also would continue to argue that any supposed failure

26  MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,                6
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

to disclose the recommendation of the Independent Data Monitoring Committee ("IDMC") was not actionable because that recommendation was non-binding and its disclosure was not required. *Id.* Defendants would also argue that CTI and James Bianco did not act with scienter in making their statements, as evidenced by the fact that Mr. Bianco engaged in no suspicious "insider sales" during the Class Period.  ¶¶ 23, 38.  In order to succeed in this Action, Lead Plaintiff would need to overcome these arguments and prevail at several distinct stages of the litigation – on the pending motions to dismiss, on a motion for class certification, on Defendants' expected motion for summary judgment, and at trial.  ¶ 47.

In light of the substantial litigation risks, and the risks of not collecting a substantial judgment, Lead Plaintiff and Lead Counsel believe that the immediate recovery of $20 million through the Settlement, which represents approximately 25% of the Settlement Class's estimated damages, is an excellent outcome for members of the Settlement Class.

**b)    The Expense, Complexity, And**
**Likely Duration Of Further Litigation**

The certainty of a substantial and immediate recovery for the Settlement Class also strongly weighs in favor of approval of the Settlement given the expense, complexity, and likely duration of continued litigation.  *See, e.g., Torrisi*, 8 F.3d at 1375-76 (finding that "the cost, complexity and time of fully litigating the case" rendered the early settlement fair); *see also Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (the court should "compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation").  Courts recognize the benefits of early resolution of securities class actions, as they are particularly complex and expensive to prosecute through discovery.  *See, e.g., In re Heritage Bond Litig.*, 2005 WL 1594403, at *6 (C.D. Cal. June 10, 2005).

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

7

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

This securities class action presented numerous complex factual and legal issues.  Plaintiffs would have required extensive document discovery, depositions and expert testimony in complex areas to demonstrate that Defendants made misrepresentations and material omissions about the Company's novel drug, pacritinib.  ¶ 75.  The Action also presented complex legal issues, including disputed questions such as the circumstances under which a company has a duty to disclose an IDMC's non-binding recommendation and statistically insignificant adverse results during an ongoing clinical trial.  ¶ 76.

In addition, the Action would likely have required additional years of litigation (including appeals) to be resolved.  In the absence of the Settlement (and assuming Lead Plaintiff would have overcome the pending motions to dismiss), the litigation would have required many months of fact and expert discovery, motions for class certification and summary judgment, and trial preparation, all requiring additional time and substantial additional expense to the class.  Even if Lead Plaintiff prevailed through each stage of the litigation, and ultimately prevailed at trial, the appeals process could span multiple years, during which the Settlement Class would receive nothing.  ¶ 47.

The substantial additional expenses that would necessarily be incurred by Lead Counsel to prosecute the case to its completion would cut directly into any litigated judgment obtained for the class.  Likewise, the substantial expenses that the CTI Defendants would incur in defending the Action would have reduced, if not exhausted, CTI's liability insurance, thus decreasing the funds available to help pay a judgment or later settlement.  ¶ 43.

Because the Settlement results in an immediate and substantial recovery for the Settlement Class and eliminates these substantial risks, expenses, and delays from further litigation, this factor also favors approval of the Settlement.

### c) The Risk Of Maintaining Class Action Status Through Trial

Although Lead Counsel believes that it would have successfully certified a litigation class

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

8

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

in this case, the potential difficulties in obtaining and maintaining class certification also weigh in favor of final approval of the settlement. *See In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig. ("VW")*, 2016 WL 6248426, at \*12 (N.D. Cal. Oct. 25, 2016). In approving settlements in complex class actions, courts recognize that, "if the parties had not settled, [Defendants] could have opposed Plaintiffs' motion for class certification and, even if the Court certified the class, there is a risk the Court could later de-certify it. As such, this factor favors settlement." *Id.*; *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class.").

Here, even if a class were certified, Defendants would invariably argue that a different or shorter class period should apply. ¶¶ 23, 36. If these arguments were accepted by the Court, investors' potential recovery would be limited.

### d)    The Amount Obtained In Settlement

The amount obtained in the Settlement, as compared to the damages that potentially could be recovered at trial, also strongly supports approval of the Settlement. The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum; rather, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Here, Mr. Steinholt estimates, based on his expert judgment and a traditional event study, that per share damages for common stock converted from Series N-1 and N-2 Preferred Stock were a maximum of $0.95 and $0.80, respectively, and that for all other shares, per share damages are between $0.14 and $0.79. ¶ 48. He estimates that the total aggregate damages for the class based on certain necessary assumptions are approximately $80 million. *Id.* Thus, the $20 million proposed Settlement represents a recovery of approximately 25% of potential damages. *Id.* Investors' recovery of 25% of their damages is over five times the average recovery achieved in

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,             9
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

securities class actions of this size.  Indeed, studies of securities class action settlements have shown that the median settlement represents 4.5% or 4.7% of investors' damages in cases where aggregate damages are estimated to be in the same range as here.  *See* ¶ 49; Ex. 8 (Cornerstone 2016 Report) at 8, fig. 7; Ex. 9 (NERA 2016 Report) at 36, fig. 29.

In sum, investors' recovery of 25% of their damages far exceeds the typical level of recovery in securities class actions and represents an excellent result for the Settlement Class, particularly in light of the substantial risks of continued litigation.

### e) The Stage Of The Proceedings And Information Available

Plaintiffs' and their counsel's knowledge of the strengths and weaknesses of the case at the time of the settlement is another factor considered in determining the fairness, reasonableness, and adequacy of a settlement.  *See Mego*, 213 F.3d at 459; *In re Rambus Inc. Derivative Litig.*, 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009).  Document and deposition discovery, however, is not necessary for plaintiffs and their counsel to acquire sufficient knowledge to assess a proposed settlement.  As courts in this Circuit have explained, "[i]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.  . . .  Instead, courts look for indications 'the parties carefully investigated the claims before reaching a resolution.'"  *VW*, 2016 WL 6248426, at *13; *see also, e.g., Mego*, 213 F.3d at 459 (finding that even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval); *Linney v. Cellular Alas. P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (same); *In re TD Ameritrade Account Holder Litig.*, 2011 WL 4079226, at *6 (N.D. Cal. Sept. 13, 2011) (approving settlement after the filing of a motion to dismiss and prior to significant discovery).

In evaluating a proposed settlement, courts commend class counsel for achieving a prompt resolution.  *See Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007)

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

10

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

("Class counsel achieved an excellent result for the class members by settling the instant action promptly."), *aff'd*, 331 Fed. App'x 452, 457 (9th Cir. 2009); *In re Cell Pathways, Inc., Sec. Litig. II*, 2002 WL 31528573, at *10 (E.D. Pa. Sept. 23, 2002) ("counsel acted in the best interest of the class by reaching a quick settlement").

Here, Lead Plaintiff and Lead Counsel promptly and thoroughly evaluated the strengths and weaknesses of Plaintiffs' claims before reaching the Settlement.  Lead Counsel conducted an extensive, pre-suit investigation and an analysis of information about CTI and pacritinib, interviewed numerous former employees of CTI and other industry participants, made Freedom of Information Act ("FOIA") requests to the FDA to obtain documents, extensively consulted with experts in FDA standards and regulations and regarding damages and loss causation, drafted a detailed complaint based on its investigation, and drafted oppositions to Defendants' motions to dismiss.  ¶¶ 17-26.  In addition, the Parties exchanged extensive information during the mediation process, which included Lead Counsel's review of core CTI documents and information regarding Defendants' ability to pay.  ¶¶ 27-30.  As a result of these efforts, Lead Plaintiff and Lead Counsel gained sufficient information to evaluate the proposed settlement of the Action for $20 million in cash before additional expenses were incurred on further litigation.

In sum, the Parties reached a settlement when they were well informed as to the facts, legal issues, and risks of the Action.  Lead Counsel's and Lead Plaintiff's ability to secure a favorable and prompt resolution of the Action before CTI's financial condition worsened and without incurring additional expenses provided a meaningful benefit to the class.

### f)      The Experience And Views Of <u>Lead Plaintiff And Lead Counsel</u>

In assessing the reasonableness of a proposed settlement, the opinion of experienced class counsel is also "entitled to considerable weight."  *See, e.g.*, *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).  Counsel is "most closely acquainted with the facts of the

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,                11
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1    underlying litigation" and, for this reason, its assessment of the resolution is afforded deference.

2    *Heritage Bond*, 2005 WL 1594403, at \*9.   As the Ninth Circuit has explained, "[p]arties

3    represented by competent counsel are better positioned than courts to produce a settlement that

4    fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d

5    373, 378 (9th Cir. 1995).   Thus, "the trial judge, absent fraud, collusion, or the like, should be

6    hesitant to substitute its own judgment for that of counsel." *Heritage Bond*, 2005 WL 1594403,

7    at \*9.

8        Lead Counsel Bernstein Litowitz Berger & Grossmann LLP has many years of experience

9    litigating and resolving securities class actions. *See* Ex. 6 (BLB&G Firm Resume).   David R.

10   Stickney and Jonathan D. Uslaner, the two partners at Bernstein Litowitz who oversaw this

11   litigation for Lead Plaintiff on a day-to-day basis, collectively have over 30 years of experience

12   litigating securities class actions and have secured billions of dollars of recoveries for defrauded

13   investors, including the largest recovery to date in a securities class action in the Ninth Circuit.

14   *See* Ex. 6 at pp. 19-20.

15       Lead Plaintiff DAFNA's support for the Settlement further demonstrates that the

16   Settlement is fair, reasonable and adequate.   DAFNA is a sophisticated institutional investor who

17   closely supervised counsel, carefully monitored the case, and was actively involved in all material

18   aspects of the prosecution of the Action.   Under the PSLRA, Lead Plaintiff's support for a

19   settlement should be accorded "special weight because [the Lead Plaintiff] may have a better

20   understanding of the case than most members of the class." *DirecTV*, 221 F.R.D. at 528.   Congress

21   enacted the PSLRA in large part to encourage sophisticated institutional investors to "participate

22   in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R.

23   Conf. Rep. 104-369, at \*32 (1995).   That Lead Plaintiff, a sophisticated institutional investor who

24   carefully oversaw the litigation, endorses the Settlement further supports its approval.   ¶ 8; *see*

25   *generally* Ex. 2 (Ghodsian Decl.) at ¶¶ 3-5.

26   MOTION FOR FINAL APPROVAL OF
     SETTLEMENT, PLAN OF ALLOCATION,                    12
     AND ATTORNEYS' FEES AND EXPENSES
     (Case No. 2:16-cv-00216-RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

g)      **The Reaction Of The Settlement
Class To The Proposed Settlement**

The Settlement Class's reaction to the proposed Settlement is another factor relevant in

assessing its adequacy.  *See Mego*, 213 F.3d at 459; *Rambus*, 2009 WL 166689, at *3.  "[T]he

absence of a large number of objections to a proposed class action settlement raises a strong

presumption that the terms of a proposed class settlement action are favorable to the class

members."  *Omnivision*, 559 F. Supp. 2d at 1043 (citation omitted).

To date, the reaction of the Settlement Class is overwhelmingly positive and supports

approval of the Settlement.  Pursuant to the Preliminary Approval Order, over 18,000 copies of

the Notice have been mailed to potential Settlement Class Members.  *See Ex. 3 (Bareither Decl.)*

¶¶ 3-7.  In addition, the Summary Notice was published in *Investor's Business Daily* and

transmitted over the *PR Newswire*.  *Id.* ¶ 8.  While the deadline set by the Court for Settlement

Class Members to exclude themselves or object to the Settlement has not yet passed, no objections

to the Settlement or requests for exclusion have been received to date.  Stickney Decl. ¶ 68.[3]  The

absence of objections to the Settlement further supports approval.

III.      **THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE**

Assessment of the adequacy of a plan of allocation in a class action is governed by the

same standards of review applicable to the settlement as a whole – the plan needs to be "fair,

reasonable and adequate."  *See Omnivision*, 559 F. Supp. 2d at 1045; *Class Plaintiffs*, 955 F.2d at

1284-85.  "An allocation formula need only have a reasonable, rational basis, particularly if

recommended by experienced and competent class counsel."  *In re WorldCom, Inc. Sec. Litig.*,

388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).

---

[3] The deadline for submitting objections and requesting exclusion from the Settlement Class is
January 11, 2018.  Lead Plaintiff will file reply papers after that date addressing any objections
and requests for exclusion that may be received.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

The Plan of Allocation provides for the distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based on the formula detailed in the Notice.  Lead Counsel developed the Plan of Allocation in consultation with Bjorn Steinholt, a financial economist who has frequently served as an expert in complex securities litigation on damages and loss causation issues.  Mr. Steinholt submitted a declaration in connection with this Action, which details the basis for the allocation formula contained in the Plan of Allocation.  *See* Ex. 4 (Steinholt Decl.), ¶¶ 5-19.

Under the Plan of Allocation, Recognized Loss Amounts for purchases and acquisitions of CTI Series N-1 and N-2 Preferred Stock are calculated based on Section 11's statutory damage formula, 15 U.S.C. § 77k(e).  Steinholt Decl. ¶¶ 9-11.  Recognized Loss Amounts for purchases and acquisitions of CTI common stock, which have only Section 10(b) claims, are calculated principally based on the difference between the amount of estimated alleged artificial inflation in CTI common stock at the time of purchase and at the time of sale.  *Id.* ¶¶ 12-16.  The Recognized Loss Amounts for purchases and acquisitions of Preferred Stock are 120% of the calculation to reflect the relative strength of such claims in this case when compared to claims arising under Section 10(b) that have higher burdens of pleading and proof.  *Id.* ¶ 11. The amount of artificial inflation is determined by a traditional event study conducted by Lead Plaintiff's expert consistent with a well-accepted methodology.  *Id.* ¶ 14.

In sum, the Plan of Allocation allocates the settlement proceeds in a fair and reasonable manner and, thus, should be approved.

## IV.     THE SETTLEMENT CLASS RECEIVED ADEQUATE NOTICE

Lead Counsel and the Court-approved claims administrator, Garden City Group, LLC ("GCG"), followed every aspect of the notice program set forth in the Court's Preliminary Approval Order.   The Declaration of Jennifer M. Bareither ("Bareither Decl."), on behalf of the Claims Administrator, details how GCG mailed 18,139 copies of the Notice Packet by first-class

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,                14
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

mail to potential Settlement Class Members, brokers and nominees from November 9, 2017 through December 26, 2017. Ex. 3 (Bareither Decl.) at ¶¶ 3-7. On November 20, 2017, the Summary Notice was also published in *Investor's Business Daily* and transmitted over the *PR Newswire*. *See id.* ¶ 8. In addition, the Notice and Claim Form, as well as other documents concerning the Settlement, were made publicly available on Lead Counsel's website, as well as on a website established for the Settlement by GCG. *See id.* ¶ 10; Stickney Decl. ¶ 67.

This combination of individual, first-class mail to all Settlement Class Members who could be identified with reasonable effort, supplemented by internet notice and publication notice, satisfies Rules 23's requirement to provide the best notice "practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Indeed, this method of providing notice has been repeatedly approved for use in securities class actions and other comparable class actions. *See Silber v. Mabon*, 18 F.3d 1449, 1452-54 (9th Cir. 1994); *In re Dendreon Corp. Class Action Litig.*, C11-01291JLR, slip op. at 3 (W.D. Wash. Aug. 2, 2013), ECF No. 111; *HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*, 2010 WL 4027632, at *3-*4 (S.D. Cal. Oct. 14, 2010); *Immune Response*, 497 F. Supp. 2d at 1170-71; *Hughes v. Microsoft Corp.*, 2001 WL 34089697, at *1 (W.D. Wash. Mar. 26, 2001).

## V.   LEAD COUNSEL'S FEE AND EXPENSE REQUEST IS FAIR AND REASONABLE

Lead Counsel's request for attorneys' fees of 20% of the Settlement Fund is supported by each of the factors considered by courts within the Ninth Circuit. The requested award of 20% is below the Ninth Circuit's 25% "benchmark," and is consistent with, or less than, fee awards in other similar cases. Moreover, the institutional investor Lead Plaintiff approves the fairness and reasonableness of the requested fee. ¶ 71. For these reasons, and as discussed further below, Lead Counsel respectfully requests that the Court approve its motion for attorneys' fees and reimbursement of expenses.

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

15

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

A.     **An Award Of Attorneys' Fees From The Common Fund Obtained Is Appropriate Under Applicable Precedent**

The Supreme Court has recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  Indeed, the Supreme Court has emphasized that private securities actions, such as the instant Action, are "a most effective weapon" and "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 318 (2007).  The PSLRA also authorizes courts to award attorneys' fees and expenses to counsel for the plaintiff class provided the award does not exceed a reasonable percentage of the amount of damages paid to the class.  15 U.S.C. § 78u-4(a)(6).

The Ninth Circuit has expressly approved the percentage-of-recovery approach, which has become the prevailing method for awarding fees in common-fund cases in the Ninth Circuit.  *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Omnivision*, 559 F. Supp. 2d at 1046 (recognizing that the "use of the percentage method in common fund cases appears to be [the] dominant" method for determining attorneys' fees).

The percentage-of-recovery method also decreases the burden imposed on courts by eliminating a detailed and time-consuming lodestar analysis.  *See In re Apple iPhone/iPod Warranty Litig.*, 40 F. Supp. 3d 1176, 1181 (N.D. Cal. 2014); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989).  Rather than engaging in a full-blown lodestar analysis, courts employ the percentage-of-recovery method and use a less rigorous "lodestar cross-check" on the reasonableness of the requested fee.  *See, e.g., Vizcaino*, 290 F.3d at 1047 (affirming use of percentage method and application of lodestar method as a cross-check); *Vincent v. Reser*, 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013) (using percentage method with lodestar cross-check); *In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at *3 (N.D. Cal. July 6, 2011) (same).  Regardless of which method is utilized, the fees awarded must be fair and reasonable under the circumstances

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,               16
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

of a particular case. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.* ("*WPPSS*")*,* 19 F.3d 1291, 1295 (9th Cir. 1994).

### B.   Factors Considered By Courts In The Ninth Circuit Support Approval Of The Requested Fee As Fair And Reasonable

Courts in the Ninth Circuit consider the following factors when determining whether a fee is fair and reasonable:  (1) the results achieved; (2) the risks of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and financial burden carried by the plaintiffs; (5) awards made in similar cases; (6) the reaction of the class; and (7) the amount of a lodestar cross-check. *See Vizcaino*, 290 F.3d at 1048-50; *Omnivision*, 559 F. Supp. 2d at 1046-48.  Each of these factors confirms that the requested fee of 20% is fair and reasonable in this Action.

### 1.   The Results Achieved, In The Face Of Significant Risks, Support The Requested Fee

The settlement achieved is an important factor to consider in determining an appropriate fee award.  *See, e.g., Omnivision*, 559 F. Supp. 2d at 1046; *see also Glass*, 331 Fed. App'x at 456-57.  Here, Lead Counsel succeeded in obtaining a $20 million cash Settlement for the Settlement Class.  This Settlement promptly returns to investors at least 25% of maximum recoverable damages and eliminates the risks, expenses, and uncertainties of continued litigation.   A recovery of 25% of maximum recoverable damages, such as the one here, far exceeds the typical recovery in securities class actions of this size.  ¶¶ 48-49.

Plaintiffs' Counsel received no compensation during the course of the Action, yet expended a total of 2,981.80 hours, and incurred over $120,000 in Litigation Expenses in prosecuting the Action for the benefit of the Settlement Class.  ¶¶ 85, 90.  In pursuing this Action, Lead Counsel had no knowledge of whether it would ever receive any compensation or reimbursement of its expenses.  Lead Counsel embarked on this complex and expensive litigation with no guarantee of ever being compensated for the substantial investment of time and money that the case required.

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

17

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

### 2. The Skill Required And Quality Of Plaintiffs' Counsel's Work Performed Support The Requested Fee

Another factor to consider in determining what fee to award is the skill required and quality of work performed by counsel. *See Heritage Bond*, 2005 WL 1594389, at *12 ("The experience of counsel is also a factor in determining the appropriate fee award."). Lead Counsel is among the most experienced and skilled practitioners in the securities litigation field, and the firm has obtained record recoveries on behalf of investors in securities class action litigation in this Circuit in amounts totaling over $1 billion. Lead Counsel's reputation as experienced and competent counsel in complex class action cases facilitated Lead Counsel's ability to achieve a $20 million recovery for the Settlement Class. ¶ 77.

The quality of Lead Counsel's work performed – in the face of the PSLRA's heightened pleading standard – further supports Lead Counsel's fee request. As set forth in greater detail in the Stickney Declaration, Lead Counsel extensively developed the record by, among other things:

- Performing an in-depth review and analysis of: (i) CTI's public SEC filings; (ii) research and other reports by securities and financial analysts covering CTI and its business; (iii) CTI's press releases and other public statements made by or about Defendants; (iv) news articles and other media reports about CTI; (v) transcripts of CTI's earnings conference calls; and (vi) pricing, trading, and other data concerning CTI common stock;

- Pressing FOIA requests to obtain documents from the FDA;

- Identifying and interviewing numerous potential witnesses, including over two dozen former CTI employees and other industry participants, many of whom provided detailed information used to prepare the Complaint;

- Consulting with relevant experts in varying specialized fields, including Richard Guarino, M.D., an expert on the FDA's standards and regulations for the drug approval process, and Mr. Steinholt, an expert on damages and loss causation issues in complex securities litigation;

- Drafting the detailed Complaint based on the investigation and information developed;

- Monitoring additional investigations and derivative litigation arising from the disclosures surrounding pacritinib for information that would be helpful to the class;

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

18

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

- Preparing extensive briefing in response to Defendants' motions to dismiss;  and

- Preparing for and participating in the lengthy mediation process, including drafting Lead Plaintiff's mediation statements, analyzing Defendants' mediation statements and the internal CTI documents produced, and analyzing CTI's financial condition and Defendants' ability to pay a substantial judgment.

Stickney Decl. ¶¶ 17-30.

The quality and vigor of opposing counsel are also important in evaluating the services rendered by Plaintiffs' Counsel.  *See, e.g.*, *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013).  Throughout the litigation and settlement negotiations, the CTI Defendants were represented by very skilled and highly respected counsel at O'Melveny & Meyers LLP and Davis Wright Tremaine LLP.  The Underwriter Defendants were likewise represented by lawyers at the prominent defense firm of Dorsey & Whitney LLP.  ¶ 78.

In the face of this knowledgeable and formidable defense, Lead Counsel nonetheless developed a case that was sufficiently strong to persuade Defendants to settle on terms favorable to the Settlement Class.

### 3.    The Contingent Nature Of The Fee And The Financial Burden Carried By Plaintiffs' Counsel Support The Requested Fee

A determination of a fair and reasonable fee includes consideration of the contingent nature of the fee and the obstacles surmounted in obtaining the settlement.  *See WPPSS*, 19 F.3d at 1299; *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2007 WL 2416513, at *1 (N.D. Cal. Aug. 16, 2007); *see also Omnivision*, 559 F. Supp. 2d at 1047.  It is an established practice in the private legal market to reward attorneys for taking on the serious risk of non-payment by permitting a fee award that reflects the contingent nature of the representation and is above the attorneys' normal hourly rate.  *See Nuvelo*, 2011 WL 2650592, at *2. "This practice encourages the legal profession to assume such a risk and promotes competent representation for plaintiffs who could not otherwise hire an attorney."  *Id.*

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,          19
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Plaintiffs' Counsel collectively expended a total of 2,981.80 hours investigating and prosecuting the Action over the past 21 months, from its inception through the present, for a total lodestar of $1,661,110.25.  ¶ 85.

### 4.    The Requested Fee Is Comparable To Fee Awards Approved In Cases With Similar Recoveries

The requested fee of 20% is also below the Ninth Circuit's benchmark for percentage fee awards in common fund cases.  The Ninth Circuit has established 25% as the "benchmark" for percentage fee awards in common-fund cases, such as this one.  *See, e.g., Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002); *Vizcaino*, 290 F.3d at 1047-48; *Hanlon*, 150 F.3d at 1029; *Torrisi*, 8 F.3d at 1376.  The 25% benchmark can "be adjusted upward or downward to account for any unusual circumstances involved in [the] case," *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989), and, "in most common fund cases, the award exceeds that benchmark." *Omnivision*, 559 F. Supp. 2d at 1047; *accord Heritage Bond*, 2005 WL 1594403, at *19 & n.14.

Courts in the Ninth Circuit and elsewhere regularly award attorney's fees greater than 20% in securities class actions.  *See Torrisi*, 8 F.3d at 1376 (affirming award of 25% of $30 million settlement); *In re Galena Biopharma, Inc. Sec. Litig.*, 2016 WL 3457165, at *13 (D. Or. June 24, 2016) (awarding 25% of $28 million settlement); *Immune Response*, 497 F. Supp. 2d at 1175-76 (awarding 25% of $10 million settlement); *Omnivision,* 559 F. Supp. 2d at 1048 (awarding 28% of $14 million settlement); *Vizcaino*, 290 F.3d at 1051 (affirming award of 28% of $97 million settlement, representing a 3.65 multiplier); *In re WSB Fin. Grp. Sec. Litig.*, 2009 WL 10677102, at *1 (W.D. Wash. Mar. 27, 2009) (awarding 25% of $4.85 million settlement); *Glass*, 2007 WL 221862, at *16 (awarding 25% of $45 million settlement); *McGuire v. Dendreon Corp.*, Case No. C07-800 MJP, slip op. at 3-4 (W.D. Wash. Dec. 20, 2010), ECF No. 235 (awarding 25% of $16.5

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

20

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

million settlement); *In re BP Prudhoe Bay Royalty Tr. Sec. Litig.*, No. C06-1505 MJP, slip op. at 2 (W.D. Wash. June 30, 2009), ECF No. 127 (awarding 27% of $43.25 million settlement).

Courts have also repeatedly awarded fees greater than 20% where a settlement was reached during the pendency of a motion to dismiss or shortly after, and where no or very limited formal discovery had been obtained as a result of the PSLRA discovery stay.  *See, e.g., Glass*, 331 Fed. App'x at 457 (affirming award of 25% where settlement reached early, noting "the favorable timing of the settlement"); *In re Int'l Rectifier Corp. Sec. Litig.*, CV 07-02544-JFW, slip op. at 1 (C.D. Cal. Feb. 8, 2010), ECF No. 316 (granting fee award of 25% of settlement fund obtained in securities class action prior to substantial formal discovery); *Oh v. Chan*, CV 07-04891 DDP, slip op. at 2 (C.D. Cal. July 28, 2009), ECF No. 99 (granting fees equaling 25% of settlement fund obtained in securities class action prior to a ruling on defendants' motion to dismiss).

In granting such fee requests, courts have commended class counsel for recognizing when, as in this case, a prompt resolution of the matter is in the best interests of the class.  *See Glass*, 2007 WL 221862, at *15 ("Class counsel achieved an excellent result for the class members by settling the instant action promptly.").  Indeed, one of the merits of awarding fees on a percentage basis is that it does not penalize attorneys for achieving a prompt resolution of a case where, as here, sufficient information about the value of the claims was determined through investigation and careful analysis of the legal and factual issues and sources of recovery, thus avoiding the need for costly and lengthy formal discovery.  *See Aichele v. City of Los Angeles,* 2015 WL 5286028, at *5 (C.D. Cal. Sept. 9, 2015); *Vizcaino*, 290 F.3d at 1050 n.5.

### 5.   The Reaction Of The Settlement Class To Date Supports The Requested Fee

The reaction of the class to a proposed settlement and fee request is a relevant factor in approving fees.  *See Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009); *Omnivision*, 559 F. Supp. 2d at 1048.

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

21

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Here, the Notice informed potential Settlement Class Members that Lead Counsel would apply for attorneys' fees of 20% of the Settlement Fund or less, *see* Notice ¶¶ 5, 71, and, to date, no Settlement Class Member has objected to the attorneys' fees requested.  Stickney Decl. ¶ 98. Lead Counsel will address any objections in its reply papers.  *Id.*

### 6.    A Lodestar Cross-check Confirms The Requested Fee Is Reasonable

Although courts in this Circuit typically apply the percentage approach to determine attorneys' fees in common-fund cases, courts may perform an informal lodestar cross-check on the percentage method.  In *Vizcaino*, the Ninth Circuit noted that as follows:

> [C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases. . . .  This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases. . . .  In common fund cases, "attorneys whose compensation depends on their winning the case[] must make up in compensation in the cases they win for the lack of compensation in the cases they lose."

290 F.3d at 1051 (citation omitted).  There, the Ninth Circuit affirmed a fee award that equaled 28% of the settlement fund and a multiplier of 3.65, which the court found to be "within the range of multipliers applied in common fund cases."  *Id.*  In cases applying the lodestar method, fee "'multipliers of between 3 and 4.5 have been common.'" *Rabin v. Concord Assets Grp., Inc.*, 1991 WL 275757, at *2 (S.D.N.Y. Dec. 19, 1991) (multiplier of 4.4).

As detailed herein and in the accompanying Stickney Declaration, Plaintiffs' Counsel devoted 2,981.80 hours to this Action, amounting to a lodestar of $1,661,110.25.[4]  Thus, Plaintiffs'

---

[4] *See* Stickney Decl. ¶ 85 and Exhibits 5A, 5B, and 7. Plaintiffs' Counsel have submitted declarations and schedules identifying the lodestar of each firm (by individual, position, billing rate, and time billed), which is more than required for these purposes.  *See, e.g., In re ECOtality, Inc. Sec. Litig.*, 2015 WL 5117618, at *4 (N.D. Cal. Aug. 28, 2015) ("The lodestar crosscheck calculation need entail neither mathematical precision nor bean counting . . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records.").  Lead Counsel's rates are set in accordance with the national market for securities class action litigation, both on the plaintiff side and the defense side.  Based on our review of publicly-available information in court filings and data compilations, our rates are aligned with the rates of the national market for firms that specialize in the prosecution and defense of large and complex securities litigation.

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

22

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Counsel's fee request of 20% of the Settlement Fund, or $4 million, plus interest, represents a multiplier of approximately 2.4 of Plaintiffs' Counsel's total lodestar (*i.e.*, $4 million / $1.661 million). A lodestar multiplier of 2.4 is well within the range of lodestar multipliers approved in similar cases, and even lower than many typical lodestar multipliers approved in securities class actions. *See Vizcaino*, 290 F.3d at 1051 (affirming a 28% award resulting in a 3.65 multiplier); *City of Roseville Emps.' Ret. Sys. v. Micron Tech., Inc.*, 2011 WL 1882515, at *7 (D. Idaho Apr. 28, 2011) (a "multiplier of 2.72 . . . is relatively standard"); *In re Mercury Interactive Corp. Sec. Litig.*, 2011 WL 826797, at *2 (N.D. Cal. Mar. 3, 2011) (awarding fee resulting in a multiplier of 3.08, which the court said was "within the acceptable range").

In sum, Lead Counsel's attorneys' fee request is below the Ninth Circuit's "benchmark" and, whether calculated as a percentage of the Settlement Fund or in relation to Plaintiffs' Counsel's lodestar, is fair and reasonable and warrants the Court's approval.

## VI.   PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE

Lead Counsel also requests reimbursement of Plaintiffs' Counsel's Litigation Expenses incurred in prosecuting and resolving the Action on behalf of the Settlement Class, which amounted to $123,211.61. ¶ 90. Attorneys who create a common fund for the benefit of a class are entitled to be reimbursed for their out-of-pocket expenses incurred in creating the fund so long as the submitted expenses are reasonable and directly related to the prosecution of the action. *See Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

From the outset, Plaintiffs' Counsel were aware that they might not recover any of their expenses. Plaintiffs' Counsel also understood that, even if the case were ultimately successful, reimbursement for expenses would not compensate them for the lost use of funds advanced to prosecute the Action. Thus, Plaintiffs' Counsel were motivated to, and did, take significant steps

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,                    23
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  to minimize expenses wherever practicable without jeopardizing the vigorous and efficient

2  prosecution of the Action.  ¶ 89.

3      The expenses sought for reimbursement are detailed in the Stickney Declaration and its

4  Exhibits 5C and 7, which set forth the specific categories of expenses incurred and the amounts.

5  The types of expenses for which reimbursement is sought are necessarily incurred in litigation and

6  routinely charged to clients billed by the hour.  These include expenses associated with, among

7  other things, on-line legal and factual research, travel, experts, consultants, and mediation.  *See,*

8  *e.g., Vincent*, 2013 WL 621865, at *5 (granting reimbursement of costs and expenses for "three

9  experts and the mediator, photocopying and mailing expenses, travel expenses, and other

10  reasonable litigation related expenses"); *Red Door Salons*, 2009 WL 248367, at *7 (granting

11  reimbursement because "[a]ttorneys routinely bill clients for all of these expenses").

12      A large component of Plaintiffs' Counsel's expenses, $44,137.50, or approximately 36%,

13  is for the cost of retaining experts concerning (i) FDA regulations and drug approval and

14  (ii) damages and loss causation in securities class actions.  ¶ 92.  These expenses were necessary

15  to ensure the effective prosecution of the Action.  The expenses also include mediation costs of

16  $34,695.66, and the costs of on-line research in the total amount of $15,100.31.  ¶¶ 93-94.

17      In connection with the request for reimbursement of Litigation Expenses, Lead Plaintiff

18  DAFNA also seeks reimbursement of $18,362.50 in costs and expenses it incurred directly related

19  to its representation of the Settlement Class.  The PSLRA specifically provides that an "award of

20  reasonable costs and expenses (including lost wages) directly relating to the representation of the

21  class" may be made to "any representative party serving on behalf of a class."  15 U.S.C. § 78u-

22  4(a)(4).  Consistent with the PSLRA, courts regularly reimburse lead plaintiffs, such as DAFNA,

23  for their reasonable costs and expenses, including the time devoted to the Action.  *See, e.g., In re*

24  *Maxim Integrated Prods., Inc. Sec. Litig.*, Case No. 08-832 JW, slip op. at 3 (N.D. Cal.

25  Nov. 1, 2010), ECF No. 312 (granting over $45,000 as lead plaintiffs' expenses based on the value

26  MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,                   24
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

of time spent); *In re CV Therapeutics, Inc., Sec. Litig.*, 2007 WL 1033478, at *2 (N.D. Cal. Apr. 4, 2007) (granting $26,000 to lead plaintiff for "reimbursement of time and expenses"); *Omnivision*, 559 F. Supp. 2d at 1049 (reimbursing lead plaintiffs for "time and expenses" in the amount of $29,913.80).

Here, Lead Plaintiff requests reimbursement of $18,362.50 consistent with the PSLRA based on the value of time devoted to the Action by senior officers of DAFNA Capital Management, LLC, including, for example, time spent communicating with Lead Counsel, reviewing pleadings, and consulting during the course of settlement negotiations. Ex. 2 (Ghodsian Decl.), ¶ 10. The time that these individuals devoted to this Action was time that they otherwise would have spent on other work for DAFNA and, thus, represented a cost to Lead Plaintiff.

The Notice informed potential Settlement Class Members that Lead Counsel would apply, on behalf of Plaintiffs' Counsel, for reimbursement of Litigation Expenses in an amount not to exceed $200,000. Notice ¶¶ 5, 71. The amount of expenses for which reimbursement is now sought is substantially less than the maximum amount stated in the Notice. Stickney Decl. ¶ 98. To date, no Settlement Class Member has objected. *Id.*

## VII.   <u>CONCLUSION</u>

For the reasons discussed, Lead Plaintiff respectfully requests that the Court grant final approval of: (i) the Settlement; (ii) the Plan of Allocation; and (iii) Lead Counsel's application for attorneys' fees and expenses, including reimbursement of Lead Plaintiff's costs and expenses.

Dated: December 28, 2017                        Respectfully submitted,

By: */s/ Roger M. Townsend*
Roger M. Townsend, WSBA #25525
BRESKIN JOHNSON & TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Tel:    (206) 652-8660
Fax:   (206) 652-8290
rtownsend@bjtlegal.com

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,          25
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1

2

*Local Counsel for Lead Plaintiff and the
Settlement Class*

3

4

By: */s/ David R. Stickney*

David R. Stickney (*pro hac vice*)

5

By: */s/ Jonathan D. Uslaner*

Jonathan D. Uslaner (*pro hac vice*)

6

BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP

7

12481 High Bluff Drive, Suite 300

San Diego, CA 92130

8

Tel:     (858) 793-0070

Fax:     (858) 793-0323

9

davids@blbglaw.com

jonathanu@blbglaw.com

10

11

*Counsel for Lead Plaintiff DAFNA and
Additional Plaintiff Michael Li and*

12

*Lead Counsel for the Settlement Class*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

26

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1

## CERTIFICATE OF SERVICE

2       I HEREBY CERTIFY that on December 28, 2017, I presented the foregoing Motion to the

3   Clerk of the Court for filing and uploading to the CM/ECF system.   This system will send

4   electronic notice of filing to all counsel of record by operation of the Court's electronic filing

5   system.

6

7                          */s/ Roger M. Townsend*

                             Roger M. Townsend, WSBA #25525

8                          BRESKIN JOHNSON & TOWNSEND PLLC

                          1000 Second Avenue, Suite 3670

9                          Seattle, WA 98104

                          Tel:   (206) 652-8660

10                        Fax:   (206) 652-8290

                          rtownsend@bjtlegal.com

11

12                          *Local Counsel for Lead Plaintiff*

                          *and the Settlement Class*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTION FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION,     27
AND ATTORNEYS' FEES AND EXPENSES
(Case No. 2:16-cv-00216-RSL)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660